**SWITZERLAND COMPANY, a Corporation and Joseph H. Walker, Plaintiffs,**

v.

**Stewart L. UDALL, Conrad Wirth, and Sam P. Weems, Defendants.**

**Civ. No. 2138.**

United States District Court
W. D. North Carolina,
Asheville Division.

Jan. 17, 1964.

Carswell & Justice, Charlotte, N. C., for plaintiffs.

William Medford, U. S. Atty., Robert J. Robinson, Asst. U. S. Atty., Asheville, N. C., for defendants.

WARLICK, District Judge.

This action, filed on April 3, 1963, is brought by the plaintiffs against the defendants as another in a series of lawsuits instituted by them and having to do with the same subject matter, but against different defendants.

Following the hearing of any number of motions and incident rulings, it ultimately reached trial and was heard in the Charlotte Division by agreement, during the first week in November past, when a full hearing was had.

The action primarily seeks to have the defendants show cause why a mandatory injunction should not be entered requiring them to remove certain physical obstacles and barriers erected by them across certain access roads along the Blue Ridge Parkway, and to restore said roads to their original condition; and to permanently enjoin and restrain the defendants from interfering with the use of said roads, or any of the accesses thereto, a recovery being sought under Chapter 85, Sec. 1361 of Title 28, U.S.Code, as enacted by the Congress on October 5, 1962. 76 Stat. 744.

From the pleadings and the voluminous records, together with the exhibits offered and evidences heard at the trial, and in keeping with Rule 52 Title 28, U.S.Code, the following facts are found.

The Plaintiff, Switzerland Company is a corporation organized under the laws of North Carolina, and Joseph H. Walker is a resident and citizen of the State of Florida.

The defendant Stewart L. Udall is Secretary of the Interior of the United States of America and is charged with the administration and control of the Department of the Interior, and its various agencies, among which is the National Park Service. Conrad L. Wirth is the Director of the National Park Service, and as such is charged with the responsibility for the maintenance and administration of all National Parks, including Blue Ridge Parkway. Sam P. Weems is Superintendent of the Blue Ridge Parkway and as such is charged with the maintenance, administration and control of said Parkway and the enforcement of the laws and regulations governing its maintenance and use. That all three are officers, agents and employees of the United States of America.

The defendants Udall and Wirth are officially residents of the District of Columbia but actually reside in the State of Maryland. The defendant Weems is a citizen and resides in the State of Virginia.

The Switzerland Company, following its incorporation in 1909, became the owner of approximately 1200 acres of land, as is shown by the conveyance to it by the late Heriot Clarkson, an attorney of Charlotte, North Carolina, who had previously purchased said lands in varying tracts through the years past. He was the majority and controlling stockholder, and its directing head.

The property as such was held for development and sale as a recreational section for summer vacationers and home owners. It lay atop and along the crest of the Blue Ridge Mountains in Mitchell and McDowell Counties. Roads were developed and accesses were made to various spots; some homes were built and generally its position reflected its promoters' ideas. Obviously it was a highly regarded area. Home sites were sought after and through restrictions the purchasers were selected. An observation tower, erected from native stone,

had been built and access to it for public use was laid out. Atop this tower a beautiful panoramic view of the valleys lying below was possible and the grandeur of the mountains could be obtained. The tower was given the name of Kilmichael.

Sometime during the early nineteen thirties the Congress of the United States enacted legislation creating the Blue Ridge Parkway through the states of Virginia and North Carolina, and between the Shenandoah and the Great Smoky Mountains National Parks, and authorized the acquisition of a right of way for said Parkway of sufficient width, but not exceeding a maximum of 200 ft., and setting out therein the manner of the acquisition of said right of way, its administration and maintenance and otherwise providing for its construction, —the routes to be laid out as nearly as possible so as to generally follow the crest of the Blue Ridge Mountains, through these two states, and being about five hundred miles in length.

Incidentally this legislation brought about the fulfillment of a dream entertained by millions through the years and has created one of the great travel areas in Eastern America.

Simply stated, among other things the law as enacted by the Congress required that the Governing Officials of the two states through which it was to be constructed, were to convey to the United States a title in fee simple to the right of way, free and clear of any incumberances.

When the necessary surveys had been made and the routes selected and accepted, and the notices given, the State of North Carolina undertook through the various laws necessary as enacted by its General Assembly to acquire the needed areas by purchase or condemnation. Failing to secure title by agreement and conveyance, and pursuant to Chapter 2 of the Public Laws of North Carolina, Session 1935, as amended by Chapter 42 of the Public Laws of said state, 1937, and by virtue of Chapter 33 of North Carolina General Statutes entitled "Eminent Domain", the State of North Carolina, through its agency, the North Carolina State Highway and Public Works Commission, as the above statutes required, filed the maps and other evidences showing the right of way in the office of the Register of Deeds for Mitchell County and similarly in the office of the Register of Deeds for McDowell County, on the 28th of April, 1937, indicating that this state agency as of the date of such filing had appropriated for use as a federal parkway, the lands described and set out in the maps filed,—thereby condemning 74.47 acres, in fee simple, and approximately 12.12 acres of land, for the purpose of an easement for said Blue Ridge Parkway, together with an additional 1.73 acres known as the "J.W. Cox" land, all of which lands condemned were owned and held by the Switzerland Company.

This project affecting the Switzerland Company and its ownership of said lands as condemned, was designated as Sec. 2–L of the Blue Ridge Parkway, which maps as filed, in the offices of the Register of Deeds for the two counties and used as the medium of condemnation do not include any roads, public or otherwise, as set out thereon.

Thereafter, on March 4, 1938, the State of North Carolina, through its then Governor Clyde R. Hoey, acting for and at the request of its agency, the State Highway and Public Works Commission, executed and delivered to the United States of America, acting on behalf of and at the request of its agency, The National Park Service of the Department of the Interior, a warranty deed in fee simple, wherein among other things conveying to the United States by such deed, the 74.47 acres in fee simple and approximately 12.12 acres which had been taken for the purpose of a scenic easement, including the 1.73 acres of the "J.W. Cox" land, all previously owned by the Switzerland Company. This deed was duly registered.

That subsequently and in the six months period as required by the law, the Switzerland Company filed its petition, having failed to agree with the State

of North Carolina as to the value of the land so taken by condemnation, and set out that it had suffered a loss through the value of the land taken and the damage to the remainder of the land by such taking, in the sum of $50,000. An answer was thereupon filed by the defendant, the North Carolina State Highway and Public Works Commission, in which it sets up various defenses as was shown therein.

Various required steps were taken, commissioners were appointed, and a study of the premises made and a report filed by such appraisers. An appeal was thereafter taken to the Findings made and filed and the action was thereupon set down for trial on its merits in the Superior Court of Mitchell County.

The cause was heard at the March 1939 term of the Superior Court of such county, at which hearing I presided, for that at such time I was a Judge of the Superior Court of North Carolina. Now, a quarter of a century later, the cause comes back to me for an additional determination as a District Judge of the United States.

One issue was submitted to the jury, in words as follows: "1. What sum, if any, is petitioner entitled to recover of the defendant for the appropriation of and damage to lands of the petitioner described in the petition, over and above all general and special benefits accruing to petitioner's lands by reason of the construction of the parkway?"

After a trial lasting one week, in which four night sessions became necessary, the jury selected to try the cause and coming as it did from a county other than Mitchell, answered the issue: $25,-000.00."

The defendant, the North Carolina State Highway and Public Works Commission, perfected its appeal to the Supreme Court of North Carolina where the trial below was affirmed. Switzerland Co. v. North Carolina State Highway Commission, 216 N.C. 450–462, 5 S.E.2d 327.

At such hearing in the Superior Court Mr. Heriot Clarkson, who had long previous to the time of the trial become a Justice of the Supreme Court of North Carolina, and who was yet majority stockholder and an officer in the Switzerland Company, testified at considerable length, and gave his opinion as to the damage suffered and sustained by the Switzerland Company by the taking of the lands conveyed to the United States. Among other things with respect thereto, he was asked the following question: "Q. Tell the jury whether there is any reservation by the Highway Commission of North Carolina, or any division in it that you ever read which reserved or which required an exit from or entrance to the parkway from one end of the Little Switzerland property to the other? A. No. there is not." This particularly being set out since the case in the Superior Court before me was tried wholly upon the theory of damages for a recovery of the value of the lands taken, with the scenic easement acquired. Additionally as the issue sets forth, a recovery was likewise sought for any damage sustained to the remainder of the tract, the abolishment of roads, etc., over and above all general and special benefits accruing.

The judgment was satisfied in full by the State of North Carolina making payment of the amount awarded by the jury.

The United States was not a party in any wise to that particular lawsuit.

An examination of the record of the trial incidentally shows that the attorneys for the Switzerland Company requested that the court give certain preemptory instructions, among them being the following:

"Gentlemen of the jury, there has been introduced in evidence in this case a deed from the State of North Carolina to the United States Government conveying the premises described therein and in said deed certain reservations were made. I charge you that no evidence has been offered in this case of any conveyance or reconveyance, either to the State of North Carolina or its citi-

zens, of any easements or rights in the property so acquired by any deed or instrument sufficient in law to re-invest in the State or in any of its citizens any rights or easements which were not reserved in the deed," and "I further charge you that under the laws of the United States, the Secretary of the Interior has only a limited right to grant con-cessions or make leases for a limited time, and that under said law there is no authority to grant a permanent right privilege or easement which could only be authorized by an act of Congress."

This instruction was given. On the appeal to the Supreme Court exception was taken to such preemptory instruc-tion, but in the opinion by Mr. Justice Schenck, it was stated: "These are cor-rect statements of the evidence and of the law, and the exceptions thereto are untenable."

The deed executed and delivered to the United States as aforesaid contained full covenants of warranty, and incidentally the following stipulation: "Be It Clearly Understood, however, that the purpose of this conveyance is to transfer to the Grantee the proprietary estate in the lands described and it is not to be con-strued as a surrender of State Sovereign-ty over the area embraced in the descrip-tion herein set out; expressly reserving the right to maintain existing public roads within or across said area, subject to such change of location as may be mutually agreed to by supplementary contract."

On August 30, 1938 the North Carolina Highway Commission and the United States of America, each acting by and through their respective designated agents, entered into a cooperative agree-ment or supplementary contract as the deed of conveyance required, wherein the roads which would be annulled were listed and those to be retained and the new ones to be built were specifically spelled out, particularly so as they might effect the parkway and its uses, and to fully conform to the designation and alignment of such parkway. These roads were all constructed and the accesses made and a full compliance had in line with such cooperative agreement,—it being executed prior to the trial in the Superior Court, was available at such trial and its contents made known to the jury, through its introduction in evi-dence. Accordingly all connected with the trial fully knew the exact status of the public roads and of the accesses to the parkway. Kilmichael Tower road-way was ultimately graded and opened with a width of ten feet, and shown, as a private road, as the Department of the Interior's official map of the Blue Ridge Parkway show all access roads claimed by plaintiff as private roads,—and ac-cesses to the parkway were made from both the north and south sides thereof.

Following the completion and opening of the Blue Ridge Parkway through the lands of the Switzerland Company and in furtherance of the authority of the Sec-retary of the Interior to grant limited rights and concessions or to make leases for a limited time, and none other, a spe-cial use permit dated October 20, 1948, was executed by the acting Superintend-ent, Blue Ridge Parkway, and accepted as tendered by the Switzerland Land Com-pany by Reid Queen, Agent. Authority was given under such permit for a term of one year from January 1, 1949, to De-cember 31, 1949, to use and maintain an existing ten foot wide private road from the right of way line to the Kilmichael Tower, and from both sides of the park-way lands, all as is shown by the blue-print attached to said permit, and there-by provide access to Kilmichael Tower. This permit was to be automatically re-newed annually for a period not to exceed ten years. This permit expired on De-cember 31, 1958. It would seem likely that prior permits had been entered into on the date of the completion of the parkway for periods as shown and were renewed as this special permit indicates, however none were introduced other than those above. Some several additional use permits were entered into for the pur-pose of providing water for the adjacent

community, sewage disposal facilities, and other factors, which the United States was agreeable to grant for the use and betterment of the lands of petitioner, the Switzerland Company,—all signed by Reid Queen, Agent for the Switzerland Land Company, Little Switzerland, North Carolina. It seems that the Parkway service dealt with the Switzerland Company throughout all of its dealings following the completion of the Parkway, as the Switzerland Land Company, since each permit offered into evidence in this hearing was so denominated.

In Defendants' Exhibits 9, 10 and 11, to which reference has been made, it appears that Reid Queen, Agent, executed all of said exhibits which had to do with accepting the leases and permits from the Department of the Interior of the United States, National Park Service. Incidentally, Exhibit 9, signed by Reid Queen, as Agent, on its expiration on December 31, 1958, was on said date renewed for an additional ten year period by Francis O. Clarkson, Jr., President of Switzerland Company. It will be noted that the agent in charge of the Blue Ridge Parkway again used the word "Switzerland Land Company" Little Switzerland, North Carolina, as the official name in said permit. Before signing, it appears that Mr. Clarkson, President, erased the word "land" from the permit.

I find further that defendants' exhibits 6 and 7, being letters written by Francis O. Clarkson, President, Switzerland Company, one dated October 17, 1949 and the other dated April 25, 1950, both addressed to the defendant, Sam P. Weems, state among other things therein "I went over it with our Agent, Mr. Reid Queen" and in the other letter wrote, "yesterday I was at Little Switzerland and went over the matter on the ground with our Agent, Mr. Reid Queen."

It is further found as a fact that Francis O. Clarkson, President, Switzerland Company, in a letter to the defendant Weems, dated October 27, 1949, sends a copy of said letter to "Mr. Reid Queen, Little Switzerland, North Carolina."

I therefore conclude from all the evidence in this case that the said Reid Queen was the Agent of the plaintiff, Switzerland Company, and as such had authority to enter into leases as made and shown for its use and benefit.

When the last special use permit dated October 20, 1948, covering the access roads expired on December 31, 1958, and the Switzerland Company refused thereafter to execute the special use permit tendered it by the government as theretofore done, the two access roads were closed and barricaded at their entrance to and on the Parkway proper, on the 22nd day of April, 1960,—all at the direction of the National Park Service of the Department of the Interior.

This continued litigation stems and is centered wholly around the 10 ft. access from the Parkway to Kilmichael Tower.

Since the government's ownership of the lands involved in the right of way of the parkway and the problems herein must of necessity determine such ownership, and rights incident thereto, I have purposely found the above facts in detail.

The plaintiff, Joseph H. Walker, purchased the 25 acres claimed by him from one J. F. Jones in 1960. Jones in turn had purchased the identic land now held by Walker from the Switzerland Company in 1957. This land used the accesses to the Kilmichael Tower for ingress and egress to the parkway. The Switzerland Company owns approximately 80 acres allegedly affected by the Kilmichael Tower roadway access.

Following the closing and barricading of the two accesses to the Kilmichael Tower as set out, plaintiff, Switzerland Company, on April 14, 1961, filed a motion in the cause in the original condemnation proceeding in Mitchell County, which was tried at the March term, 1939, seeking to amend the judgment entered in such action by having it decree that the roads referred to in their complaint in this action were public roads; and served a copy of the motion on the Chairman of the North Carolina State Highway and Public Works Commission. At such time on motion Stewart L. Udall,

Secretary of the Interior of the United States was through some means, made an additional party defendant and service was undertaken to be had on him as such Secretary by mailing a copy of such motion and order by Registered Mail to his official place of residence in the District of Columbia. Thereafter Secretary Udall entered a special appearance in such cause and removed the action to the United States District Court for the Western District of North Carolina, Asheville Division, on the grounds of a lack of jurisdiction of his person.

On a hearing before the undersigned, Secretary Udall's motion to dismiss was allowed and the action was thereupon remanded to the Superior Court of Mitchell County.

█ It would seem that a hearing on such motion to amend the original judgment of 1939 came on before Judge P.C. Froneberger of the Superior Court of North Carolina, and on the 27th of September, 1962, such judgment was amended as is shown by the exhibit attached to the complaint in the action. Obviously the amended judgment is of no validity in so far as the United States is concerned for that it was not a party to such motion and thereupon such is not binding on it or any Department or agency thereof.

Ironically, paragraph 15 of this motion in the cause to amend the 1939 judgment indicates that plaintiff was seeking a relief from the United States as such paragraph clearly shows: "That plaintiff owns approximately 80 acres of valuable land to the north of this obliterated access road, which land is rendered practically valueless due to the action of the United States Government."

On September 14, 1962, Joseph H. Walker, individually, as plaintiff, filed his complaint against the United States of America as defendant in civil action No. 2101 in the Charlotte Division, with jury trial demanded, in which he sought relief pursuant to Title 28 U.S.Code § 1346 (b), alleging that his lands were damaged by the closing of the Kilmichael Tower road and its entrance to the Parkway and asking compensation therefor in the sum of $50,000.

In a similar action the Switzerland Company as plaintiff, instituted its action against the United States of America by the filing of its complaint on September 13, 1962, civil action No. 2102, in which it sought to recover the sum of $125,000, as its claimed damage for the closing of said access rights of way to the Kilmichael Tower road,—bottoming its claim under Title 28 U.S.Code, § 1346 (b). Recovery in both of these actions is sought under the "Federal Tort Claims Act."

Answers were duly filed by the United States of America and these actions were pending for trial. However, on November 4, 1963, when this action was heard by the court in Charlotte, both the plaintiff Walker and the Switzerland Company in open court, were permitted under their motions filed, to submit to voluntary dismissals of these two actions without prejudice.

Again an examination of the pleadings filed in these two tort claims actions against the United States somewhat clearly shows the plaintiffs' position in such filing.

In Paragraph 11 of the Switzerland Company's verified complaint, as is similarly shown in Paragraph 12 of the verified complaint filed by the plaintiff Walker, the following allegation appears:

" * * * on or about April 22, 1960, the defendant (which is the United States in each case) through its agency, the Department of the Interior, and its agents, the Secretary of the Interior, the Director of the National Park Service, and the Director and employees of the Blue Ridge Parkway, who at all times were acting within the scope of their employment, wrongfully entered upon, or caused to be entered upon, the above described access roads and, * * * closed said roads." (Parentheses added)

This allegation in each complaint, together with the allegations contained in

the complaints as a whole seemed clearly to show that the plaintiffs regarded the things done by the agents and employees as being actions of the United States.

On the foregoing findings of fact, which admittedly are too long, but which seemed necessary in order to clearly present the evidence as it was offered at the trial, I conclude as a matter of law that plaintiffs are not entitled to the relief which they seek and that this action against the defendants should be and it is hereby dismissed. I come to that conclusion from a thorough study of the law under which the action is brought.

Plaintiffs set out in their complaint that this action is instituted under Title 28 U.S.Code 1361, enacted on October 5, 1962, as follows:

"§ 1361. *Action to compel an officer of the United States to perform his duty.*

"The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

Prior to the enactment of this statute the district courts outside the District of Columbia had no authority to grant relief in the nature of a writ of mandamus, i. e., an order requiring a Government official to take affirmative action in the performance of his official duty, as distinguished from an injunction restraining a Government official from taking action determined to be not within his authority. Updegraff v. Talbott, 221 F.2d 342, 346 (C.A.4) ; Marshall v. Crotty, 185 F.2d 622, 626–627 (C.A. 1) ; United States v. Schurz, 102 U.S. 378, 393–394, 26 L.Ed. 167.

■ This statute was intended to give the District Courts, outside the District of Columbia, the same mandamus authority as that of the District Court for the District of Columbia. That is all that was intended. Page 2 of the Senate report reads as follows:

"This bill will not give access to the Federal Courts to an action which cannot now be brought against a Federal official in the United States District Court for the District of Columbia."

It is equally clear from both the Senate and the House reports that the Congress did not intend by the enactment of this statute to waive the government immunity from suits seeking mandatory relief. The Senate report, page 2, provides:

"This legislation does not create new liabilities or new causes of action against the United States Government."

The House Report, page 1, provides:

"This bill does not create new liabilities for the Government."

■ The District Court did not have, prior to the enactment of this statute, and this statute did not give to the District Court, jurisdiction of a suit seeking mandatory or injunctive relief against the United States. This statute by its terms, is directed toward compelling "an official or employee of the United States or any agency thereof, to perform a duty owed to the plaintiff. United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 ; United States v. United States Fidelity Company, 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 ; United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888.

The Senate Report, pages 1 and 2, provides:

"The Purpose of the amendments is to provide specifically that the jurisdiction conferred on the district courts by the bill is limited to compelling a Government official or agency to perform a duty owed to the plaintiff or to make a decision, but not to direct or influence the exercise of discretion of the officer or agency in the making of the decision. * * * First, it specifically grants jurisdiction to the district courts to issue orders compelling Government officials to perform their duties and to make decisions in matters involving the exercise of dis-

cretion, but not to direct or influence the exercise of the officer or agency in the making of the decision."

The actual purpose of this statute was to extend the power of the District Courts outside the District of Columbia to compel official action by mandatory order only in those cases involving non-discretionary ministerial duties. This was the only power possessed by the District Court for the District of Columbia before the statute was enacted. Decatur v. Paulding, 14 Pet. 497, 514–517, 10 L. Ed. 559; Work v. United States ex rel. Rives, 267 U.S. 175, 177, 45 S.Ct. 252, 69 L.Ed. 561; Wilbur v. United States ex rel. Kadrie, 281 U.S. 206, 218, 50 S.Ct. 320, 74 L.Ed. 809; United States ex rel. Girard Trust Co. v. Helvering, 301 U.S. 540, 543, 57 S.Ct. 855, 81 L.Ed. 1272.

■ An official action is not ministerial unless "the duty in a particular situation is so plainly prescribed as to be free from doubt and equivalent to a positive command * * *" Wilbur v. United States ex rel. Kadrie, supra; United States ex rel. McLennan v. Wilbur, 283 U.S. 414, 420, 51 S.Ct. 502, 75 L.Ed. 1148; Interstate Commerce Commission v. New York, N. H. & H. R. Co., 287 U.S. 178, 203–204, 53 S.Ct. 106, 77 L. Ed. 248; United States ex rel. Girard Trust Co. v. Helvering, supra.

Where the scope of an official's duties depends upon an interpretation of a statute the duty is not a ministerial one, enforceable by a mandatory order, unless the construction or application of the statute is so plain as to be free from doubt, Work v. United States, ex rel. Rives, supra; Wilbur v. United States ex rel. Kadrie, supra; Interstate Commerce Commission v. New York, N. H. & H. R. Co., supra; United States ex rel. Chicago Great Western Railroad Co. v. Interstate Commerce Commission, 294 U. S. 50, 60, 63, 55 S.Ct. 326, 79 L.Ed. 752.

■ In this case the duty of these officials depended upon the interpretation of the deed and other documents and the Court Proceedings involved in the acquisition of this property by the United States. The interpretation of this material is certainly not so plain as to be free from doubt.

■ Therefore since the United States claims title to the access roads, within Section 2–L of the Blue Ridge Parkway, that are set out in this complaint, this action must therefore be considered, and I so determine, an action against the United States. The United States, not having consented to be sued, the action obviously will not lie. Belknap v. Schild, 161 U.S. 10, 16 S.Ct. 443, 40 L.Ed. 599; United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058; Maricopa County v. Valley Bank, 318 U.S. 357, 63 S.Ct. 587, 87 L.Ed. 834; Lynch v. United States, 292 U.S. 571, 581–582, 54 S.Ct. 840, 78 L.Ed. 1434; State of Minnesota v. United States, 305 U.S. 382, 387, 59 S.Ct. 292, 83 L.Ed. 235.

In a recent case of Malone v. Bowdoin, 369 U.S. 643, 82 S.Ct. 980, 8 L.Ed.2d 168, the Supreme Court, explaining and quoting from the case of Larson v. Domestic and Foreign Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628, has this to say:

"Cutting through the tangle of previous decisions, the Court expressly postulated the rule that the action of a federal officer affecting property claimed by a plaintiff can be made the basis of a suit for specific relief against the officer as an individual only if the officer's action is 'not within the officer's statutory powers or, if within those powers, only if the powers, or their exercise in the particular case, are constitutionally void.'"

Dugan v. Rank, 372 U.S. 609, 83 S. Ct. 999, 10 L.Ed.2d 15, 1963, involved an injunction suit against local officials of the United States Bureau of Reclamation. The Court decided that this was in reality a suit against the United States by stating:

" * * * that the suit against the petitioning local officials of the Reclamation Bureau is in fact against

the United States and they must be dismissed therefrom; that the United States either owned or has acquired or taken the water rights involved in the suit * * *."

I conclude therefore as follows:

1. That this is a suit against, the United States and without its consent cannot be maintained by the plaintiffs.

2. The provisions of 28 U.S.Code § 1361, invoked by the plaintiffs as the authority under which their action was instituted, is not applicable in this case.

3. That the access roads leading to Kilmichael Tower from either side of the Blue Ridge Parkway are not public roads.

Counsel will submit decree.