Joseph WHITE, Jr., Lois M. White, Anthony J. DeMetro, Betty J. DeMetro, Anthony Enea, Rose Enea, Frank A. Siino and Mary Siino, Appellants,

v.

ADMINISTRATOR OF GENERAL SERVICES ADMINISTRATION OF the UNITED STATES of America and Fred H. Johnston, Appellees.

No. 19427.

United States Court of Appeals Ninth Circuit.

March 23, 1965.

Robert J. Rossi, Alfred A. Affinito, Pittsburg, Cal., for appellants.

Ramsey Clark, Asst. Atty. Gen., Roger P. Marquis, S. Billingsley Hill, Attys., Dept. of Justice, Washington, D. C., Cecil F. Poole, U. S. Atty., J. Harold Weise, Asst. U. S. Atty., San Francisco, Cal., for appellees.

Before MADDEN, Judge of the Court of Claims, and HAMLEY and KOELSCH, Circuit Judges.

MADDEN, Judge.

The appellants brought suit in the District Court requesting that court to issue a mandamus against the appellees ordering them to execute a deed, on behalf of the United States, conveying to the appellants a certain interest in land. They also requested relief by way of a declaratory judgment under the provisions of 28 U.S.C. §§ 2201 and 2202, and relief under the Administrative Procedure Act, 5 U. S.C. § 1009.

In their complaint in the District Court the appellants alleged that the United States invited bids for the purchase from the United States of two parcels of real property in Contra Costa County, California, subject to "an easement 20 feet in width granted to the Southern Pacific Company and lying equally on either side of two parallel existing railroad tracks" in the most northerly part of the parcels; that appellants' bid was accepted by the United States; that the appellants paid the $140,000 bid price and received a deed; that the deed described the property as subject to an easement 79 feet wide instead of 20 feet; that when the appellants later discovered the discrepancy between the deed and the invitation for bids they demanded a deed of the land subject only to the 20 foot easement; that appellees "wrongfully" refused to give them such a conveyance.

It would appear from the appellants' allegations that the appellees, as agents of the United States and acting as such, made a contract with appellants to convey certain land to them. Except as agents of the United States the appellees would have had no authority to make a contract to convey land belonging to the United States, or to make the deed which they did make, whether that deed was in compliance with the terms of the contract or not. The interest in the land which, the appellants say, should have been but was not conveyed to them by the deed is now in the United States, unless it has been conveyed to some person other than the appellants.

The object of the appellants in the instant suit is to get the title out of the United States and into the appellants. A suit with such an objective is a suit for specific performance, regardless of what may be said in the complaint which initiates the suit. And, the title to the interest which the court is asked to order to be conveyed to the appellants being now in the United States, the order would have to be made against the United States. It follows that the United States would have to be a party to the suit.

If the fact that the United States is not named as a party in the suit could be overlooked and, though not named, it were treated as the real party in interest, which it is, the suit would still have to be dismissed, because the United States has not

consented to be judicially compelled to perform its contracts. From the beginning of its history, the United States asserted and maintained complete immunity from suit until Congress, by the Act of February 24, 1855, 10 Stat. 612, created the United States Court of Claims and gave consent for the United States to be sued for compensation for certain breaches of duty, one of which was breach of contract.[1] The Act of March 3, 1887, 24 Stat. 505, 28 U.S.C. § 1346, conferred a partly parallel jurisdiction upon the United States District Courts. Those statutes have never been regarded as having given consent that the United States could be ordered by a court to specifically perform a contract.

In the case of Larson v. Domestic and Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949), the United States had entered into a contract to sell coal to the plaintiff corporation, and the government agent who had made the contract for the United States refused to deliver the coal to the plaintiff, but entered into a contract to sell it to another person. The plaintiff, asserting that the title to the coal had passed to it and that the government agent was merely an individual tort feasor in refusing to deliver the coal, sought an injunction against the agent forbidding him to sell the coal to another person, and a declaratory judgment to the effect that the sale to the plaintiff was valid and the purported sale to the other person invalid. The questions, other than the question of consent to be sued, were whether the plaintiff was required by the contract to make a certain advance deposit in order to be entitled to delivery, and whether title had passed to the plaintiff at some stage before delivery was refused.

The Supreme Court, in its opinion delivered by Chief Justice Vinson, held that, regardless of which interpretation of the contract was the valid one and of whether or not, according to the law of sales, title to the coal had passed to the plaintiff, the plaintiff's suit was a suit to order an agent of the Government not to sell or deliver the coal to anyone other than the plaintiff, was therefore a suit against the Government, and that the courts had no jurisdiction to entertain the suit because the Government had not consented to such a suit.

Mr. Justice Frankfurter wrote a vigorous dissenting opinion in the Larson case, in which dissent Mr. Justice Burton concurred. The dissenting justices would have held, as the court held in United States v. Lee, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171; Land v. Dollar, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209, and in many intervening cases, that the government agent was simply committing a common-law tort but was seeking shelter behind some statutory or other sovereign authority. They would have granted the relief sought, against the government agent as an individual wrongdoer, if the plaintiff could prove that on the merits the coal belong to it and it was entitled to delivery.

The plaintiff in Larson had a much more promising case than do the plaintiffs in the instant litigation. In Larson, an injunction could have been issued as prayed for, against the Government's agent as an individual and without requiring him to take any action on behalf of the Government. In our case, if the appellants are given the relief which they seek, the appellees will have to sign the name of the United States of America to a deed conveying an interest in land. No one can do that as an individual. When considered in relation to the Larson opinion, the instant case is an *a fortiori* case.

Even the dissenting Justices in Larson would have decided the instant case as we decide it. In Justice Frankfurter's dissenting opinion, 337 U.S. at page 712, 69 S.Ct. at page 1472, he says:

> "If a defendant is asked to transfer the possession or title of property which is the Government's, judged by the conventional tests of posses-

---

1. See now 28 U.S.C. § 1491.

sion or ownership, * * * such demands are effective demands upon the sovereign, which require the sovereign's consent as a requisite to the grant of judicial remedies."

The appellants would have us find Congressional authorization for their suit in the Act of October 5, 1962, 28 U.S.C. § 1361, which provides:

> "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

To find in § 1361 such a revolutionary step on the part of Congress as the overturning of what had been settled law since the foundation of the Government, i. e., that the courts do not have jurisdiction to order the Government to specifically perform its contracts, would be to make too much of a short and simple piece of legislation. In McEachern v. United States, 212 F.Supp. 706, 712 (E.D.Va.), the court said, of § 1361:

> "The Act does not create new liabilities or new causes of action against the United States Government or its officials,"

and cited the pertinent legislative history in support of its statement. In Rose v. McNamara, 225 F.Supp. 891, 893 (E.D. Pa.), the court said that § 1361

> "did not restrict the previous notions of sovereign immunity nor did it authorize actions previously prohibited which, though in form against the officers, were in reality against the United States."

See also Sprague Electric Co. v. The Tax Court of the United States, 230 F.Supp. 779, 782 (D.C.Mass.).

We agree with the statements quoted above. We find nothing in the statutes relating to declaratory judgments or administrative procedure which is helpful to the appellants.

We affirm the judgment of the District Court.