**John VISHNEVSKY and Margaret Vishnevsky, Plaintiffs-Appellants,**

v.

**UNITED STATES of America,\* Defendant-Appellee.**

**No. 77–1767.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 19, 1978.

Decided Aug. 9, 1978.

---

\* The complaint in this action, befitting its self-description as one for mandamus, is captioned *John Vishnevsky and Margaret Ann Vishnevsky v. Phillip Coates, District Director of Internal Revenue,* and the case was docketed in the district court in that form. The district court's Memorandum and Order treated the suit as one for a tax refund, and accordingly restyled it as an action against the United States. We accept that formulation, as have the parties, for convenience only.

Sherwin C. Peltin, Milwaukee, Wis., for plaintiffs-appellants.

Francis J. Gould, Appellate Section, Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before PELL and TONE, Circuit Judges, and EAST, Senior District Judge.**

PELL, Circuit Judge.

Plaintiffs-appellants John and Margaret Vishnevsky (taxpayers) are husband and wife who filed joint federal income tax returns for the years 1965 through 1970. Having apparently audited their returns, the Internal Revenue Service issued a statutory notice of deficiency for the years 1966, 1967, 1969, and 1970. The notice was by letter of July 10, 1972, signed by W. S. Stumpf, District Director of Internal Revenue, on behalf of Johnnie M. Walters, Commissioner of Internal Revenue. As pertinent, the letter states:

Dear Mr. and Mrs. Vishnevsky:

In accordance with the provisions of existing Internal Revenue laws, notice is given that the determination of your income tax liability discloses deficiencies for the taxable years ended December 31, 1966, December 31, 1967,

December 31, 1969 and December 31, 1970 in the amounts of $1,491.35, $1,820.51, $3,651.29 and $3,177.69 respectively, and *an overassessment for the taxable year ended December 31, 1965 in the amount of $1,407.41.* The attached statement shows the computation of the deficiencies and the overassessment.

*When final determination is made as to the deficiencies proposed in this letter, the overassessment will be scheduled for adjustment to the extent allowable and applied as set forth in section 6402 of the Internal Revenue Code.* [Emphasis added.]

In three additional paragraphs, the letter explains the procedures to be followed with reference to the deficiencies, in the event taxpayers did or did not wish to contest the Service's determinations thereof.

As was their right, taxpayers appealed the Service's deficiency determinations to the Tax Court, where they were represented by the same experienced tax attorney who represents them here. By mutual agreement made in hopes of reaching a settlement, a February 1973 trial date in the Tax Court was postponed until February 1974. Settlement negotiations were unsuccessful, a trial was had, and the decision of the Tax Court was rendered in September 1974. The deficiencies found to be due were in total amount in excess of the overassessment sum.

Taxpayers did not appeal the Tax Court's decision, and they do not challenge their liability thereunder here. When they sought to have their 1965 overpayment offset against that liability, however, the Service refused. The period of limitations for filing a claim for refund for 1965 had expired on June 30, 1973,[1] during the pendency of the Tax Court proceedings, and taxpayers and their counsel, relying on the apparent promise of the District Director's July 10, 1972, letter to adjust their liabili-

---

** Senior Judge William G. East of the District of Oregon is sitting by designation.

1. *See* 26 U.S.C. § 6511. There is no dispute between the parties that this is the date the period of limitations expired.

ties, had filed no formal claim for a refund. The Commissioner, through his delegates, took the position that the failure to file the claim during the limitations period deprived him of authority to allow the claim thereafter, relying on 26 U.S.C. § 6511(b)(1). That subsection provides:

> No credit or refund shall be allowed or made after the expiration of the period of limitation prescribed . . . for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the taxpayer within such period.

The Government's position, then as now, has been exclusively based on this procedural assertion. It has never in any way denied that District Director Stumpf had and exercised delegated authority in dispatching the letter of July 10, 1972, nor has the fact of or the accuracy of the determination that taxpayers overpaid their 1965 taxes by $1,407.41 been questioned. The Government concedes, in short, that taxpayers would have had every right to a credit or refund if they had not appealed the deficiencies to the Tax Court, or if the Tax Court proceedings had not extended past June 30, 1973, or if a timely claim for refund had been filed. It is insisted, however, that taxpayers had no right to rely on the apparent promise of the District Director that the "overassessment will be scheduled for adjustment" and, moreover, that no relief may be obtained in any court from the harsh results of their reliance, reliance which at least in the clear light of hindsight could arguably be termed as negligent.

Taxpayers filed this suit for mandamus relief, invoking the district court's jurisdiction under 28 U.S.C. § 1361. For reasons not entirely clear, however, the district court treated the action as one for a tax refund under 28 U.S.C. § 1346(a)(1).[2] Having earlier denied the Government's motion to dismiss the case for lack of jurisdiction, the court, faced with cross-motions for summary judgment, granted this relief in favor of the Government. The propriety of mandamus relief was not considered by the court.

### I.

The Government argues that, if the case is an action for a refund under 28 U.S.C. § 1346, the district court was without jurisdiction to entertain it. We address this contention first, because of our duty to satisfy ourselves of the jurisdiction of the district courts when we are called upon to review their judgments.

The obstacle to § 1346 jurisdiction is created by 26 U.S.C. § 7422(a), which provides:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof.

The language describing the coverage of § 1346 and § 7422(a) is identical; the conclusion that the latter provision establishes a prerequisite to suit under the former is inescapable. The question on the present issue is whether the requirement of § 7422(a) can be waived and, if so, whether that happened here.

The district court thought the requirement could be waived, but that it had not been waived here.[3] For the conclusion that

---

**2.** That statute provides:

(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

(1) Any civil action against the United States for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal revenue laws . . . ..

**3.** The court reasoned that no waiver could be found because the statement in the July 10, 1972, letter was not strictly false (i. e., the

waiver was possible, the court relied on *United States v. Felt & Tarrant Manufacturing Company,* 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025 (1931); and *Tucker v. Alexander,* 275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253 (1927). These cases unquestionably establish the possibility of waiver where the period of limitations for filing a refund claim has not run. In *Tucker,* taxpayer had filed a claim, but at trial the grounds set out therein were abandoned in favor of another. Although the Court in *Tucker* did not find it necessary to say so, the failure of the "claim" to indicate in any way its true amount or nature rendered it out of compliance with the statutory predecessor of § 7422(a). *See Felt & Tarrant, supra,* 283 U.S. at 272, 51 S.Ct. 376. The Government made no objection to the total change of theory by taxpayer, and, in fact, stipulated that if taxpayer's legal theory was correct, judgment in a specified amount should be entered. The Court held that the claim requirement could be and had been waived:

> The statute and the regulations must be read in light of their purpose. They are devised, not as traps for the unwary, but for the convenience of government officials in passing upon claims for refund and in preparing for trial. Failure to observe them does not necessarily preclude recovery. If compliance is insisted upon, dismissal of the suit may be followed by a new claim for refund and another suit within the period of limitations. If the Commissioner is not deceived or misled by the failure to describe accurately the claim, as obviously he was not here, it may be more convenient for the government and decidedly in the interest of an orderly administrative procedure that the claim should be disposed of upon its merits on a first trial without imposing upon government and taxpayer the necessity of further legal proceedings.

275 U.S. at 231, 48 S.Ct. at 46. The Court carefully distinguished a situation, not there present, where a waiver, if allowed, would circumvent the statute of limitations.

Likewise, in *Felt & Tarrant, supra,* the Court recognized the possibility of waiver of the statute's requirement, but said that none could be found where, as there, "the Commissioner had no knowledge of the claim and took no action with respect to it." 283 U.S. at 273, 51 S.Ct. at 378.

In *United States v. Memphis Cotton Oil Co.,* 288 U.S. 62, 53 S.Ct. 278, 77 L.Ed. 619 (1933), the Court held that a claim amendment, out of time, to satisfy formal requirements had to be allowed where the Commissioner did not dismiss the claim on the basis of the formal defects, but had in fact investigated and allowed the claim on the merits, prior to asserting the defects as a basis for rejection. But the Court carefully distinguished "the function of a statute requiring the presentation of a claim within a given period of time" from that of "a regulation making provision as to form." *Id.* at 71, 53 S.Ct. at 281. And in *Angelus Milling Co. v. Commissioner of Internal Revenue,* 325 U.S. 293, 296, 65 S.Ct. 1162, 1164, 89 L.Ed. 1619 (1945), the Court stated that "[i]nsofar as Congress has made explicit statutory requirements, they must be observed and are beyond the dispensing power of Treasury officials." *United States v. Garbutt Oil Co.,* 302 U.S. 528, 58 S.Ct. 320, 82 L.Ed. 405 (1938), is to the same effect *see id.* at 533, 58 S.Ct. 320, treating *Memphis Cotton, supra,* as a case involving amendments to make more specific a timely general claim, and emphasizing the distinction made in *Tucker* denying the possibility of waiver in cases involving failure to file a claim within the applicable limitations period. *Id.* at 533–35, 58 S.Ct. 320.

We conclude that the only possible meaning for 26 U.S.C. § 7422(a), in light of *Tucker, Memphis Cotton, Angelus Milling,* and *Garbutt Oil,* is that when the applicable period of limitations has run and no refund claim whatsoever has been filed, there is no room to argue that the statutory require-

---

I.R.S. could in fact have allowed credit or refund at the time the letter was written, and for nearly a year thereafter) and no specific representations that a refund claim would not be

necessary were ever made. Our conclusion that no waiver was possible in the circumstances of this case makes it unnecessary to evaluate this reasoning.

ment has been waived. In such circumstances as these, a district court lacks jurisdiction to entertain an action brought under 28 U.S.C. § 1346(a)(1). *See Canton v. United States,* 388 F.2d 985 (8th Cir. 1968); *United States v. Rochelle,* 363 F.2d 225, 231 (5th Cir. 1966); *Melchior v. United States,* 145 F.Supp. 193, 136 Ct.Cl. 483 (1956).

## II.

■ This action, however, as we have said, was brought not under 28 U.S.C. § 1346(a)(1), but under 28 U.S.C. § 1361, which provides:

The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States to perform a duty owed to the plaintiff.

The district court did not dispose of this theory for relief. Because there are no material facts in dispute here, we consider whether the district court had jurisdiction of this action as one in the nature of mandamus and whether it should have granted the writ.[4] Justice surely would not be served by remanding this dispute over $1,407.41 to the district court for its opinion on mandamus, when the complete pertinent record is before us now, and a district court opinion would either be appealed again or left to stand because the costs of the action had exceeded its worth.

■ The appropriateness of mandamus relief turns on the existence of a clear right in the plaintiff to demand the performance by the defendant of a plainly defined, peremptory, and ministerial duty, and the lack of an adequate remedy other than mandamus. *City of Highland Park v. Train,* 519 F.2d 681, 691 (7th Cir. 1975), *cert. denied,* 424 U.S. 927, 96 S.Ct. 1141, 47 L.Ed.2d 337 (1976); *City of Milwaukee v. Saxbe, supra,* 546 F.2d at 700.

If there is a clear ministerial duty of the District Director to credit the 1965 overpayment against the 1966, 1967, 1969, and 1970 deficiencies, taxpayers obviously have the right to demand performance of the duty. They, and only they, could receive the benefit of performance.

■ We think there is such a duty, in the unique circumstances of this case.[5] The District Director's July 10, 1972, letter, as we have stated, informed taxpayers that

[w]hen final determination is made as to the deficiencies proposed in this letter, the overassessment will be scheduled for adjustment to the extent allowable and applied as set forth in section 6402 of the Internal Revenue Code.

Section 6402 (26 U.S.C.) both establishes a right in the Secretary of the Treasury (or his delegates in the I.R.S.) to set off amounts overpaid by taxpayers against their tax liabilities and mandates the refunding of any balance. It provides:

In the case of any overpayment, the Secretary or his delegate, within the applicable period of limitations, *may* credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and *shall* refund any balance to such person. [Emphasis added.]

Insofar as § 6402 *permits* the crediting of overpayments against tax liabilities, it invokes the exercise of discretion by the Secretary or his delegate. *See Kalb v. United States,* 505 F.2d 506, 509 (2d Cir. 1974), *cert. denied,* 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975). Such an exercise could most assuredly not be challenged in an action for mandamus, if indeed it could be challenged at all. Because § 6402 goes further to provide that the Secretary "*shall* refund any balance," it cannot be gainsaid that a duty is created to put determined

---

4. Because mandamus jurisdiction depends on the same asserted duty on the part of a government official that justifies relief, the existence of § 1361 jurisdiction is unavoidably bound up with the merits. *City of Milwaukee v. Saxbe,* 546 F.2d 693, 700–01 (7th Cir. 1976).

5. The parties have cited, and our independent research has uncovered, no cases directly on point.

overpayments to a taxpayer's credit in one way or another.[6] "Admittedly there is no discretion in [the I.R.S. District Director's] act of paying back any overpayment." *Pennsylvania Turnpike Commission v. McGinnes*, 179 F.Supp. 578, 581 (E.D.Pa. 1959), *aff'd*, 278 F.2d 330 (3d Cir. 1960), *cert. denied*, 364 U.S. 820, 81 S.Ct. 57, 5 L.Ed.2d 51.

We pause here to emphasize our awareness that the process of determining that there has been an overpayment is undoubtedly an act of discretion by the pertinent official(s), which could never be the subject of mandamus relief. This suit, however, does not ask a federal court to make such a determination, or to question an administrative determination. The fact and amount of overpayment have been determined by the I.R.S., and no suggestion is made that the determination was in any way irregular or inaccurate. Taxpayers, far from attacking the discretionary determination, merely seek the benefits thereof.

The Government insists that there was no duty to apply the admitted overpayment to taxpayers' account pursuant to § 6402, and, indeed, that the District Director was prohibited from doing so, because such action would not have been "within the applicable period of limitations." *Id.* It relies entirely on 26 U.S.C. § 6511(b)(1), quoted in full *supra*, which provides that "[n]o credit or refund shall be allowed or made" after the limitations period for filing refund claims unless such a claim was timely filed.

The Government concedes, however, that the District Director could have allowed a credit or refund at any time prior to June 30, 1973, even though no claim had been filed. This comports with the plain meaning of § 6511(b)(1).

We believe the Government's reliance on § 6511(b)(1) is misplaced precisely because a credit or refund was in fact allowed prior to June 30, 1973. The District Director's July 10, 1972, letter to taxpayers was no casual communication. It gave the formal notices

of determined tax liability required by statute. 26 U.S.C. § 6303. It stated in no uncertain terms that an overpayment of $1,407.41 had been determined, and promised that the overassessment *"will be scheduled for adjustment"* pursuant to 26 U.S.C. § 6402 when the deficiencies were finally determined. We reject the Government's implicit argument, unsupported by any statutory provision, that a credit or refund is not "allowed" within the meaning of § 6511(b)(1) until it is in fact scheduled for set off under § 6402. If the July 10 letter's expressed determination of overpayment was not such an allowance, the flat assurance that it "will be scheduled" was. "The date on which the Secretary or his delegate first authorizes the scheduling of an overassessment in respect of any internal revenue tax shall be considered as the date of allowance of refund or credit in respect of such tax." 26 U.S.C. § 6407. Applying the plain language of this provision, which the Government conveniently ignores, to the facts of this rather unique case, we hold that a refund or credit was allowed here on July 10, 1972. As this occurred well "within the applicable period of limitations," 26 U.S.C. § 6402, established by 26 U.S.C. § 6511(b)(1), the District Director has a plain and ministerial duty to give taxpayers the benefit of their determined overpayment.

The Government argues that even if there was such a duty, mandamus relief would be inappropriate because taxpayers could have obtained adequate relief in a suit for refund if only they had filed a timely claim. Because mandamus is an extraordinary remedy, it is a "settled rule that the writ of mandamus may not be employed to secure the adjudication of a disputed right for which an ordinary suit affords a remedy equally adequate, and complete." *United States ex rel. Girard Trust Co. v. Helvering*, 301 U.S. 540, 544, 57 S.Ct. 855, 857, 81 L.Ed. 1272 (1937); *accord, City of Highland Park v. Train, supra*, 519

---

6. This assumes that the "applicable period of limitations" has not run at the pertinent time. We consider this issue below.

F.2d at 691–92. But what we have said in part I of this opinion establishes that the ordinary suit, for a refund, as the situation existed at the time the present litigation was instituted, would have provided taxpayers no remedy at all. Neither *Girard Trust* nor *Highland Park* involved such a situation.[7] In both cases, the existence of the ordinary remedy, at least at the time suit was filed, was explicitly recognized.

Mandamus surely will lie here, where the very reason the ordinarily adequate remedy of a refund suit is foreclosed is that taxpayers and their counsel believed and relied on the promise of the District Director that their liabilities would be adjusted by the amount of the overpayment. There was no reason for them to file a refund claim in preparation for a refund suit, for "[i]t is the rejection [of the administrative claim for refund] which makes the suit necessary." *United States v. Felt & Tarrant Manufacturing Company, supra,* 283 U.S. at 273, 51 S.Ct. at 378.

We note also that this adequate remedy argument comes with particularly poor grace in the circumstances of this case. "Even tax administration does not as a matter of principle preclude considerations of fairness." *Angelus Milling Co. v. Commissioner of Internal Revenue, supra,* 325 U.S. at 297, 65 S.Ct. at 1165. A suit for mandamus may be governed by equitable considerations, *Whitehouse v. Illinois Central Railroad Co.,* 349 U.S. 366, 373, 75 S.Ct. 845, 99 L.Ed. 1155 (1955); *Girard Trust, supra,* 301 U.S. at 543, 57 S.Ct. 855, and the equities here are all on the side of the taxpayers. The complexities of this case could quickly be swept aside if we were only concerned with fundamental fairness.

■ We turn to the Government's final argument. The effect of mandamus relief, it is said, will expend itself on the public treasury, and the action is thus effectively one against the United States without its consent, in violation of the principles of sovereign immunity. We cannot agree.

It is true enough that in ordinary suits, a plaintiff may not avoid the bar of sovereign immunity merely by casting his action against individual Government officials. The result of the judgment or decree sought, not the identity of the parties, is dispositive. If relief would operate against the sovereign, the suit is barred unless consented to. *See Minnesota v. Hitchcock,* 185 U.S. 373, 386, 22 S.Ct. 650, 46 L.Ed. 954 (1902). And it is clearly the law that an ordinary action which will result in depletion of the public treasury operates against the sovereign. *See Dugan v. Rank,* 372 U.S. 609, 620–21, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963), and the cases discussed therein.

The problem with this theory is that it simply does not apply to actions for mandamus. After stating that courts must inquire into the effects of judgments or decrees sought and may not rely on the identity of the parties, the Supreme Court in *Minnesota v. Hitchcock, supra* at 386, 22 S.Ct. at 655, said that

this statement has no reference to and does not include those cases in which officers of the United States are sued, in appropriate form to compel them to perform some ministerial duty imposed upon them by law, and which they wrongfully neglect or refuse to perform. Such suits would not be deemed suits against the United States within the rule that the government cannot be sued except by its consent . . . .

The precise conceptual basis for this distinction was not made clear. It may be that Congress, by giving federal courts jurisdiction of mandamus actions has waived any immunity, or that to command the perform-

---

7. *Girard Trust* did not point out that the Government's right to retain the monies sought for refund, or at least to assert that right, on the grounds that the taxpayer owed other taxes or was not equitably entitled to the monies, could preclude a finding of a clear duty to refund. 301 U.S. at 543, 57 S.Ct. 855. Here, of course, mandamus would in no way interfere with the District Director's discretion to apply the overpayment to other tax liabilities owed by taxpayers, and no suggestion is made that there are equitable reasons why taxpayers are not entitled to at least a credit of the overpayment. We might add that we would have difficulty imagining such a suggestion in the circumstances of this case.

ance of a clear and ministerial legal duty does not impinge on the discretionary functions which comprise the essence of sovereignty. In any event, so far as we are aware, the Supreme Court has yet to deem it necessary to invoke sovereign immunity problems as being includable in the issues in a mandamus action, and none of the cases articulating the rules of sovereign immunity were themselves, or purported to deal with, mandamus actions.[8]

Indeed, the Supreme Court has itself, in a long line of cases, specifically affirmed the appropriateness of mandamus relief to compel federal officers to pay monies out of the public treasury, where the duty to do so was clear and ministerial. *See, e. g., Miguel v. McCarl*, 291 U.S. 442, 451–52, 54 S.Ct. 465, 78 L.Ed. 901 (1934); *Mellon v. Orinoco Iron Company*, 266 U.S. 121, 125–26, 45 S.Ct. 53, 69 L.Ed. 199 (1924); *Houston v. Ormes*, 252 U.S. 469, 472–73, 40 S.Ct. 369, 64 L.Ed. 667 (1920); *Parish v. MacVeagh*, 214 U.S. 124, 29 S.Ct. 556, 53 L.Ed. 936 (1909); *Roberts v. United States*, 176 U.S. 221, 229–31, 20 S.Ct. 376, 44 L.Ed. 443 (1900); *Kendall v. United States*, 37 U.S. (12 Pet.) 364, 424–29, 9 L.Ed. 1181 (1838).[9] *Accord, Udall v. States of Wisconsin, Colorado and Minnesota*, 113 U.S.App.D.C. 183, 185–186, 306 F.2d 790, 792–93 (1962), *cert. denied*, 371 U.S. 969 (1963); *Clackamas County, Ore. v. McKay*, 94 U.S.App.D.C. 108, 117–123, 219 F.2d 479, 488–94 (1954), *judgment vacated*

as *moot*, 349 U.S. 909, 75 S.Ct. 599, 99 L.Ed. 1244 (1955). *See also Carter v. Seamans*, 411 F.2d 767, 773–75 (5th Cir. 1969). None of these cases squarely controls this one, of course, because the existence of a duty susceptible to mandamus relief depends on the facts of each case, and the applicable law. They do, however, make it extremely difficult if not impossible to interpret other Supreme Court decisions dealing with sovereign immunity, but not involving or specifically referring to mandamus, to have changed, silently and radically, the law by merging two distinct lines of authority and overruling one of them.

The Government, without a single reference to the Supreme Court cases we have just discussed, cites a number of lower court opinions, some of which appear to say that there can be no mandamus jurisdiction where the effect of judgment, were the suit an ordinary one, would operate against the sovereign. In a single sentence, *e. g.*, the court in *Essex v. Vinal*, 499 F.2d 226, 231 (8th Cir. 1974), *cert. denied*, 419 U.S. 1107, 95 S.Ct. 779, 42 L.Ed.2d 803 (1975), stated that 28 U.S.C. § 1361 did not waive sovereign immunity, which implies that even if the action at bar there were a proper one for mandamus relief,[10] such would be barred. No consideration whatsoever was given to the long line of authorities discussed in the preceding paragraph herein,[11]

---

**8.** *See, e. g., Mine Safety Appliances Co. v. Forrestal*, 326 U.S. 371, 66 S.Ct. 219, 90 L.Ed.2d 140, 83 S.Ct. 552, 9 L.Ed.2d 539 (1945), where the complaint sought declaratory and injunctive relief which the Court found to be, in effect, an attempt to collect a Government debt in a suit to which it had not consented. Situations where the officer could be sued as an individual, including his violations of statutory commands (*Houston v. Ormes, infra* was specifically cited) were expressly distinguished. In *Hawaii v. Gordon*, 373 U.S. 57, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963), the general rule of *Dugan v. Rank, supra*, was invoked to bar an original action in the Supreme Court against a federal officer. But as has been clear since *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803), the Supreme Court does not have original mandamus jurisdiction. *Compare Udall v. Tallman*, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965), where the Court found mandamus inappropriate in an action to com-

pel the issuance of leases of federal land, but did so on the merits, without any reference to sovereign immunity.

**9.** It will be noted that all of these decisions predate the 1962 enactment of 28 U.S.C. § 1361. Each involved the mandamus jurisdiction which prior to that time existed only in the district court of the District of Columbia. The Government's argument that § 1361 did not expand the jurisdiction previously possessed by that court thus obviously misses the mark.

**10.** So far as we can tell from the *Essex* opinion, there would have been no clear duty to enforce by mandamus, because taxpayer never filed a refund claim *and* no action allowing a refund or credit was ever taken by the I.R.S.

**11.** The court cited *Switzerland Co. v. Udall*, 225 F.Supp. 812 (W.D.N.C.1964), *aff'd* 337 F.2d 56 (4th Cir.), *cert. denied*, 380 U.S. 914, 85 S.Ct.

which apparently was not called to the court's attention. Likewise, without any consideration of the distinct authorities which have governed mandamus actions, the court in *White v. Administrator of General Services Administration*, 343 F.2d 444 (9th Cir. 1965), refused to entertain a mandamus action to compel specific performance by a Government official of a contract to sell Government land, and stated that § 1361 did not restrict the notions of sovereign immunity that predated its enactment.[12]

As we have indicated in accompanying footnotes, these cases may be distinguished from the one before us on the basis of their facts. Insofar as they purport to announce the "rule" that a proper mandamus suit is barred by sovereign immunity, however, their failure even to consider the Supreme Court decisions stating and holding the opposite renders them unpersuasive, and we respectfully decline to follow them.[13]

For the reasons we have stated, we conclude that the district court's judgment must be reversed, for the court should have entertained this action as the mandamus suit it purports to be and should have granted the writ. We reemphasize here that our decision is very much tied to the particular and unique facts of this case. We surely do not mean to encourage, and will not in the future entertain, lawsuits invoking mandamus relief against Treasury officials unless there is the clear and peremptory duty which we have found here. We doubt that such a duty will exist in many cases. It may also be appropriate to add that taxpayers would be very poorly advised to read this opinion as any sort of indication that a court of equity will somehow find a way to excuse negligent non-adherence to appropriate tax procedures. The only safe and sure way to proceed is to familiarize oneself with the pertinent rules and to follow them to the letter. Even here, where, as we have seen, taxpayers were in the right, the sounder practice would obviously have been to have filed the refund claim, out of an abundance of caution, and thus to have avoided the operose situation that has developed. Finally, we cannot be unmindful of frequent judicial references to the extraordinary nature of the remedy of mandamus. Putting it simply, we do not regard the present case, involving as it does to an extent governmental integrity, as an ordinary case.

Accordingly the judgment of the district court is reversed and the cause is remanded with direction to enter summary judgment for the plaintiffs.

REVERSED AND REMANDED.

TONE, Circuit Judge, dissenting.

In *City of Highland Park v. Train*, 519 F.2d 681, 691–692 (7th Cir. 1975), we held that mandamus was not available because another remedy, an action under § 304(a)(2) of the Clean Air Amendments of 1970, 42 U.S.C. § 1857h–2(a)(2), would have been available to obtain the same relief if plaintiffs had chosen to comply with the proce-

---

900, 13 L.Ed.2d 800 (1965), where the court *expressly found no plain and clear duty* to enforce and thus termed the action effectively one against the United States without its consent, and *Commonwealth of Massachusetts v. Connor*, 248 F.Supp. 656 (D.Mass.1966), *aff'd*, 366 F.2d 778 (1st Cir.), which is to the same effect. Neither of these cases support the notion that a proper action for mandamus is somehow barred by sovereign immunity.

**12.** *White* is distinguishable from this case on two bases. First, as was explicitly recognized in *Larson v. Domestic and Foreign Commerce Corp.*, 337 U.S. 682, 703, 69 S.Ct. 1457, 93 L.Ed. 16, 28 (1949), on which the court in *White* primarily relied, absent some specific statutory mandate, Government agents involved in sales

contracts have the normal power and duty to exercise discretion in construing and deciding whether to perform contracts. Mandamus naturally could not interfere with that exercise. Second, as the *White* court noted, only the United States as an entity can pass title to Government land. *See* the excellent discussion in *Clackamas County, supra*, 219 F.2d at 491–93.

**13.** Likewise, for the same reasons, we decline to follow *Commonwealth of Kentucky ex rel. Hancock v. Ruckelshaus*, 362 F.Supp. 360, 368 (W.D.Ky.1973), *aff'd* 497 F.2d 1172 (6th Cir. 1974), *cert. denied*, 420 U.S. 971, 95 S.Ct. 1390, 43 L.Ed.2d 650 (1975); and *Rose v. McNamara*, 225 F.Supp. 891, 893 (E.D.Pa.1963).

dural prerequisites to an action under that section. For me, that case and this can be distinguished on a principled basis only if the taxpayer here did not have a reasonable opportunity to pursue the remedy provided by 28 U.S.C. § 1346(a)(1). Although the taxpayer and his counsel may well have been misled by the District Director's letter of July 10, 1972, the statutory remedy was nevertheless available if timely asserted and the fact that the remedy became time barred did not make mandamus appropriate when it would not have been so previously. I therefore reluctantly dissent.