John F. FINLEY, Executor of the Estate of Mildred B. Whitlock, Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

No. 78–1066.

United States Court of Appeals, Fifth Circuit.

Feb. 20, 1980.

---

M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Act. Chief, App. Section, Richard Farber, James A. Riedy, Attys., Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendant-appellant.

George H. DeCarion, South Miami, Fla., for plaintiff-appellee.

Before MORGAN, REAVLEY and HATCHETT, Circuit Judges.

REAVLEY, Circuit Judge:

This appeal arises from a refund suit in which the district court determined that the value of a trust, over which taxpayer's decedent held a general testamentary power of appointment, could not be included under I.R.C. § 2041(a), (b)(1) in decedent's taxable estate since she had been mentally incompetent and therefore legally incapable of exercising that power throughout her possession of it. We decide, however, that under I.R.C. § 7422(e)[1] the district court lost juris-

---

1. I.R.C. § 7422(e) provides, in pertinent part: (e) Stay of proceedings.—If the Secretary or his delegate prior to the hearing of a suit brought by a taxpayer in a district court or the Court of Claims for the recovery of any income tax, estate tax, or gift tax (or any penalty relating to such taxes) mails to the taxpayer a notice that a deficiency has been determined in respect of the tax which is the subject matter of taxpayer's suit, the pro-

diction over the issue when taxpayer filed a petition in the Tax Court for redetermination of an additional disputed deficiency in the estate's tax payment.

Appellee taxpayer, executor of the estate of Mildred B. Whitlock, timely filed a federal estate tax return showing a tax liability of $116,020 on a gross estate of $653,147. The inclusion of a trust valued at $395,342 accounted for well over half of the gross estate and most of the resultant tax liability. The Internal Revenue Service had included the trust in decedent's estate under I.R.C. § 2041(a)(2) because it had been subject to her general testamentary power of appointment. Taxpayer disputed the inclusion of the trust, however, on the ground that decedent had been legally incapable of using her power since she had been mentally incompetent, lacking testamentary capacity, for as long as she had held the power. Thus, appellee argued, that power had been neither legally nor actually "exercisable" by the decedent and, therefore, was not within the definition of a "general power of appointment" includible in her federal taxable estate. I.R.C. § 2041(b)(1).

After the Internal Revenue Service rejected his request for a refund based on this argument, taxpayer filed this refund action on June 6, 1975. On September 30, 1975, prior to any hearing in the suit, the government mailed to the taxpayer a notice of deficiency based on taxpayer's having claimed in the estate tax return a $14,983 credit for state death tax without having actually paid that tax as required by I.R.C. § 2011(a). Under I.R.C. § 7422(e) proceedings in the district court should then have been stayed for the ninety-day period during which the taxpayer could file for a redetermination of the deficiency in the Tax Court and for sixty days thereafter. No one, however, informed the district

court of the mailing of the deficiency notice. In fact, even the attorney representing the government apparently was not made aware of the deficiency notice for several months. Therefore, on November 6, 1975, the parties submitted the case for decision based on written stipulations, and on December 2, 1975, the district court—unaware of its duty to stay proceedings pending action on the deficiency notice—handed down a judgment for taxpayer, entering a "final summary judgment" on December 15, 1975.

Taxpayer then petitioned the Tax Court on December 29, 1975, for a redetermination of the credit deficiency, asserting that since the decision of the district court had finally fixed the size of the federal estate, and therefore the maximum allowable credit for state taxes under section 2011(b) as well, the state tax, which was based on these amounts, see Fla.Stat.Ann. § 198.02 (West Supp.1979), could and would be paid. Now aware of the deficiency notice and of taxpayer's petition in the Tax Court, the government on June 24, 1976, moved the district court to vacate its judgment based on its having lost jurisdiction under section 7422(e). The district court denied the motion to vacate and, following submission by the parties of the amount computed to be due taxpayer in refund, entered an amended final judgment on November 7, 1977. We reverse.

## I.

█ Section 7422(e) of the Internal Revenue Code requires that, when prior to the hearing of his refund suit in the district court the Internal Revenue Service mails to a taxpayer a deficiency notice "in respect of the tax which is the subject matter" of the refund suit, if the taxpayer petitions the

ceedings in taxpayer's suit shall be stayed during the period of time in which the taxpayer may file a petition with the Tax Court for a redetermination of the asserted deficiency, and for 60 days thereafter. If the taxpayer files a petition with the Tax Court, the district court or the Court of Claims, as the case may be, shall lose jurisdiction of taxpayer's suit to whatever extent jurisdic-

tion is acquired by the Tax Court of the subject matter of taxpayer's suit for refund. If the taxpayer does not file a petition with the Tax Court for a redetermination of the asserted deficiency, the United States may counterclaim in the taxpayer's suit . . . within the period of the stay of proceedings notwithstanding that the time for such pleading may have otherwise expired.

Tax Court for redetermination of this deficiency, the district court "shall lose jurisdiction of taxpayer's suit to whatever extent jurisdiction is acquired by the Tax Court of the subject matter of taxpayer's suit for refund." The extent of Tax Court acquisition of jurisdiction over the "subject matter" of the refund suit is not a narrow reference to the particular issues raised in the deficiency notice as compared to those involved in the refund suit. Instead, it refers to the cause or causes of action involved in each. S.Rep.No.1622, 83d Cong., 2d Sess. 611, *reprinted in* [1954] U.S.Code Cong. & Admin.News, pp. 4621, 5261. The displacement of jurisdiction must be given a scope at least this broad in order to avoid res judicata conflicts between the proceeding commenced in the Tax Court and that carried on in the district court.

■ In federal tax litigation one's total income tax liability for each taxable year constitutes a single, unified cause of action, regardless of the variety of contested issues and points that may bear on the final computation. *Commissioner v. Sunnen,* 333 U.S. 591, 598, 68 S.Ct. 715, 92 L.Ed. 898 (1948). As in any other area, res judicata bars subsequent litigation of a previously adjudicated cause of action, including those claims and defenses that could have been, but were not, raised in the earlier proceeding. *Id.* All such issues are considered to have merged into the prior judgment. Accordingly, when during the course of a refund suit a taxpayer petitions the Tax Court in response to an additional disputed deficiency for the same tax year, the Tax Court acquires jurisdiction over the entire cause of action, necessarily including all possible issues controlling the determination of the amount of tax liability for the year in question whether or not raised by the deficiency notice. The district court is then divested of jurisdiction over all such issues under section 7422(e). *United States v. Joe Graham Post No. 119, American Legion,* 340 F.2d 474, 476–77 (5th Cir.), *cert. denied,* 382 U.S. 824, 86 S.Ct. 55, 15 L.Ed.2d 70 (1965); *Russell v. United States,* 592 F.2d 1069, 1071–72 (9th Cir.), *cert. denied,* —— U.S. ——, 100 S.Ct. 308, 62 L.Ed.2d 315 (1979).

*See, e. g., Fairchild Ind., Inc. v. United States,* 590 F.2d 343 (Ct.Cl.1978) (text at 78–2 U.S.T.C. (CCH) ¶ 9755).

■ This court has ruled, similar to the rule in *Sunnen,* that the tax liability of an estate constitutes a single cause of action and that an adjudication of that liability bars under res judicata another litigation even of issues and defenses that were not, but could have been, raised in the first proceeding. *Estate of Hunt v. United States,* 309 F.2d 146, 147–49 (5th Cir. 1962). Thus, consistent with the result in *Russell* and *Joe Graham Post No. 119,* when in a situation governed by section 7422(e) an estate taxpayer files a petition in the Tax Court, that court acquires jurisdiction over the entire cause of action regarding the estate's tax liability, and the district court is divested of jurisdiction over the estate's refund suit, regardless of the lack of common identity between the issues raised by the two claims.

In the case at bar a deficiency notice regarding the estate's tax liability was mailed prior to any hearing in the refund suit. In response to this notice taxpayer filed a petition in the Tax Court. Under the standard application of section 7422(e), outlined above, it appears that the district court should have been divested of jurisdiction. Two unique characteristics of this case, however, warrant consideration regarding whether, because of these characteristics, this case should be excepted from the ordinary operation of section 7422(e) and the jurisdiction of the district court upheld.

## II.

■ Taxpayer contends, first, that section 7422(e) should not operate to oust district court jurisdiction because of the unique nature of the credit issue raised in the deficiency notice with which his Tax Court petition dealt. The allowable credit for state death taxes varies under I.R.C. § 2011(b) with the size of the taxable estate and therefore cannot be ascertained until after the size of that estate is determined.

Section 2011(c), therefore, explicitly provides that the taxpayer may wait to claim this credit until sixty days after final judgment in any Tax Court or refund suit regarding the estate. By so providing, taxpayer argues, Congress implied an intention that the credit for state death taxes should constitute a cause of action separate from general questions of estate tax liability. To a limited extent, he is correct. Where, pursuant to the statutory scheme of section 2011(c), a taxpayer properly claims a state death tax credit following an adjudication of general estate tax liability and then files a request for refund of the amount of such credit, an action to collect that refund would be predicated on a claim not subject to being raised in the first suit and therefore would not be barred under res judicata by that prior proceeding. Any other result would frustrate congressional purpose and the section 2011(c) statutory mechanism for claiming such credits.

Any such inference of a congressional intent to allow separate consideration of the state death tax credit issue—an obvious departure from the general judicially created rule that all elements of estate tax liability comprise but a single cause of action—does not, however, logically extend to situations, such as that here, in which the taxpayer has elected to forego the mechanism of section 2011(c). The inference of this congressional dispensation from the judicial norm arises only as a tool necessary to the effectuation of the statutory scheme. Moreover, unlike the situation in which the taxpayer follows the section 2011(c) paradigm, where as here the taxpayer chooses to include the claim for the credit for state death taxes in his original return, he has presented this claim for consideration, along with all other claimed credits and deductions, by the Internal Revenue Service in its original determination of the general estate tax liability. Therefore, since the general estate tax liability so determined would reflect this inclusion, any dispute as to the treatment of this credit, either by taxpayer or by the Internal Revenue Service, would be an issue susceptible to adjudication in

any court action on this general estate tax liability. In short, by voluntarily disdaining the section 2011(c) statutory mechanism for claiming the credit for state death taxes, taxpayer has also foregone its concomitant dispensation of a separate consideration of the credit issue.

Taxpayer relies for his argument—that even a Tax Court redetermination of a deficiency based on the state death tax credit issue should not under section 7422(e) divest a district court hearing a refund suit of its jurisdiction over broader questions of the estate's general tax liability—on *Rosamond Gifford Charitable Corp. v. United States,* 170 F.Supp. 239 (N.D.N.Y.1958), the only case prior to this to consider the issue. There, as here, the taxpayer improperly claimed the credit for state death taxes in the original estate tax return, knowing the state tax had not actually been paid as required by the federal law. After taxpayer commenced a refund action in the district court, disputing the inclusion in the taxable estate of a large charitable bequest, the Internal Revenue Service notified the taxpayer of a deficiency in the amount of the credit based on the nonpayment of the state tax. In response, the taxpayer petitioned the Tax Court for a redetermination of that deficiency, pending the outcome of the refund suit in which the size of the taxable estate and, derivatively, the actual state tax liability and allowable federal credit would be determined. The district court concluded that section 7422(e) would not operate to divest its jurisdiction on the basis of this particular Tax Court petition.

It is at least arguable, however, that the taxpayer in *Rosamond Gifford* was forced to claim the credit in the original estate tax return. The enactment of section 2011(c)(3), allowing one to claim the credit within sixty days after a refund suit, was at that time still pending in Congress.[2] In order to receive the credit a taxpayer engaged in a refund suit was required under existing law to claim it within the same statutory period as those taxpayers not engaged in any litigation—that is, within four years after the filing of the estate tax

2. Section 2011(c)(3) was enacted Pub.L. 85–866, § 65(a), 72 Stat. 1657 (1958).

return. Internal Revenue Code of 1939, ch. 3, § 813(b), 53 Stat. 125. That administrative and judicial refund proceedings could exceed that period was a very real possibility. Both the parties and the court in *Rosamond Gifford* viewed the claiming of the credit in the original return and the filing of the narrow Tax Court petition as simply a method of preserving the status quo, salvaging taxpayer's rights, in the face of a deficient statutory scheme.[3] 170 F.Supp. at 243. To the extent that the result in *Rosamond Gifford* reflects that court's solution for the quandary of the taxpayer, it is now obviated or supervened by the statutory mechanism of section 2011(c)(3). Insofar as the court's decision rests simply on the unique nature or "separability" of the credit issue, it is contrary to the general judicial rule that all issues bearing on the estate's tax liability comprise a single cause of action, and we, therefore, reject it.

## III.

The second circumstance differentiating this case from the norm is the unfortunate failure of the parties to advise the district court of the deficiency notice, resulting in its failure to stay proceedings in accordance with section 7422(e). Because of this omission, the trial court had proceeded to decide the merits of the case before taxpayer filed his Tax Court petition.

In this situation, it seems unfair to invalidate the judgment of the district court where it had no notice that it should have stayed proceedings. It is an attractive argument that in such a situation the jurisdictional provision of section 7422(e) should apply only upon notice to the district court of the deficiency letter, and that where, as here, such notice comes not only after a "hearing on the suit," but after judgment,[4] section 7422(e) by its own terms should not result in a divesting of the district court's jurisdiction. Congress, however, has given no indication that failure to comply with the stay provisions of section 7422(e) should render inapplicable the mandatory ousting of jurisdiction under the same section.[5] Moreover, the latter provision is a congressional limitation on the subject matter jurisdiction of Article III district courts no less

3. While the taxpayer's claiming of the credit in the original return may have been necessitated, it is less clear that its petition to the Tax Court was similarly required. Under § 7422(e) and its predecessor had the taxpayer not petitioned the Tax Court for a redetermination of the deficiency, the government would have been allowed to counterclaim in the district court refund suit for the amount of that deficiency. This alternative was not discussed by the *Rosamond Gifford* court.

4. As noted above, final judgment was not entered until November 7, 1977. The district court had, however, reached "final summary judgment" on December 15, 1975 and was awaiting a computation of the amount to be awarded taxpayer in refund when it was first apprised of the pending tax court proceeding.

5. In enacting § 7422(e) Congress not only failed to provide for the consequences of a court's not properly staying its proceedings, it fostered such noncompliance by failing to provide any mechanism for, or allocating the burden to either party of, notifying the trial court of the existence of a deficiency notice. It is the view of this court that, as the initiator of the deficiency notice and the party most benefited by the stay, the government should bear the burden of notifying the trial court in the form of a motion to stay under Fed.R.Civ.P. 7.

The procedure for effecting removal of a cause of action from state to federal court provides a good analogy and model. Under 28 U.S.C. § 1446(e), removal automatically stays all proceedings in the state court unless and until the case is remanded. The removing party, however, is responsible for notifying the state court of removal. Where the removing party fails to provide such notification, proceedings held in the state court subsequent to the filing of the removal petition in federal court need not be stayed and are not void despite the validity of the removal petition otherwise. *See, e. g., Medrano v. Texas,* 580 F.2d 803, 804 (5th Cir. 1978) (per curiam).

The same procedure could be employed under § 7422(e). The mailing of a deficiency notice dealing with the same cause of action as that involved in the refund suit would be effective as a basis for a stay under § 7422(e) only upon proper notice to the trial court. Where, as here, such notice comes after the "hearing of the suit" has commenced, the whole of § 7422(e) would by its own terms be inoperative. To impose such a procedure and sanction for noncompliance with that procedure in the instant case, however, would amount to extreme judicial legislation; we, therefore, decline to pronounce that rule here.

than are the general federal question and diversity statutes, 28 U.S.C. §§ 1331, 1332, and is similarly not subject to suspension simply because of the harshness of the result in a given case, or the tardiness of the jurisdictional challenge. *See* C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3522 (1975). Accordingly, we hold that, though it yields a lamentable waste of judicial resources, the failure of the district court to stay proceedings according to section 7422(e) did not preclude its later being ousted of jurisdiction under the same section upon taxpayer's filing a petition in the Tax Court on the same cause of action as the subject matter of the refund suit in the district court.

We, therefore, reverse the ruling of the district court denying appellant's motion to vacate the judgment. That court having been divested of jurisdiction over the cause of action, its final judgment of November 8, 1977, can be of no force and is hereby vacated. Because we find the district court lost jurisdiction to adjudicate the matter, we express no opinion on the merits of the section 2041 claim regarding the inclusion in the taxable estate of taxpayer's decedent of the trust controlled by the general testamentary power of appointment.

REVERSED AND VACATED.