ESTATE OF EDWARD P. BENDER, MARTHA A. BENDER, EXECUTRIX, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9338-82.          Filed April 22, 1986.

*John Taylor*, for the petitioner.
*Edward Peduzzi*, for the respondent.

---

PARR, *Judge*:* Respondent determined a deficiency in petitioner's estate tax liability of $202,673.28.[1] The issues for decision are: (1) Whether this Court has jurisdiction to determine decedent's correct estate tax liability when the determination involves examination of respondent's offset of a decedent's income tax liabilities against his income tax overpayments, and, if we have jurisdiction, (2) whether, in determining the decedent's estate tax liability, respondent was correct in removing as an estate asset the decedent's gross annual income tax overpayments, setting off each year's overpayment against that year's liability, and then netting the resulting annual overpayments and liabilities against each other.

### FINDINGS OF FACT

This case was submitted fully stipulated pursuant to Rule 122[2] and all the facts so submitted are found accordingly. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Martha A. Bender (petitioner) is the executrix of the Estate of Edward P. Bender, her deceased husband (decedent). Petitioner resided at Carrolltown, Pennsylvania, at the time of the filing of the petition.

On May 13, 1978, decedent died testate as a domiciliary of Carrolltown. On May 17, 1978, decedent's Last Will and Testament, dated April 13, 1978, was admitted to probate by the Register of Wills for Cambria County, Pennsylvania, and recorded in Will Book Volume 56 at page 842. Letters testamentary were issued by the Register of Wills to Martha A. Bender as Executrix.

The operative paragraphs of decedent's will appear below.

1. I direct that my just debts and funeral expenses be paid promptly after my decease.

2. All the rest, residue and remainder of my property, real, personal

---

*By order of the Chief Judge, this case was reassigned from Judge Charles E. Clapp II to Judge Carolyn Miller Parr.

[1]Respondent has asserted an increased deficiency in his answer, the amount of which he ultimately contends is $781.11. Petitioner does not dispute the mathematical corrections yielding this increased deficiency.

[2]Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure and all section references are to the Internal Revenue Code of 1954 as amended and in effect on the date of decedent's death.

and mixed, I give, devise and bequeath to my beloved wife, Martha, if she survives me. If she should predecease me, or die with me in a common accident, or within thirty (30) days after my death, then it is my will that all my estate, real, personal and mixed, shall go to my two sons, John and Edward, equally, share and share alike, with the stipulation that they pay to my daughter, Grace, the sum of Two Hundred Thousand ($200,000.00) Dollars within a period of two (2) years following my death. If they should fail, or should elect not to make the $200,000.00 payment, then, in that event, all my property, real, personal and mixed, shall go to my three children, John, Edward, and Grace, equally, share and share alike.

3. I hereby nominate, constitute and appoint my wife, Martha, the Executrix of this, my Last Will and Testament, if she survives me, and in the event she predeceases me, then I nominate, constitute and appoint my two sons, John and Edward, the Executors of this, my Last Will and Testament.

On January 31, 1979, Mrs. Bender filed with the Orphans' Court Division of the Court of Common Pleas of Cambria County, Pennsylvania, a disclaimer which disclaimed the following property: a 75-percent interest in all the assets of E. P. Bender Coal Co. (the company) "subject, however, to seventy-five (75%) percent of all debts and liabilities of said E. P. Bender Coal Company"; 100 percent of a $125,000 note due to the estate by John E. Bender, one of decedent's sons; and 100 percent of a $125,000 note due to the estate by Edward P. Bender, Jr., decedent's other son. The above-described disclaimer was a qualified disclaimer as that term is comprehended in sections 2046 and 2518. Decedent's sons elected not to make the $200,000 payment referred to in decedent's will.

During the period 1972 through his death, decedent operated the company as a sole proprietorship engaged in the business of coal stripping. During each of the years 1972 through 1977, decedent filed a joint income tax return with Mrs. Bender. Mrs. Bender did not earn any taxable income in her own right during those years. For the short taxable year ending May 13, 1978, the date of decedent's death, a separate return was filed on behalf of the decedent. This short-year return showed a net operating loss of $814,472.

As a result of the 1978 net operating loss, Forms 1045, Applications for Tentative Refund, and Forms 1040X,

Amended U.S. Individual Income Tax Returns, were filed and various adjustments were made to the annual income tax accounts of Edward P. Bender and Martha A. Bender for the years 1972 through 1978. These adjustments were of sufficient magnitude to be considered pursuant to section 6405 and were approved by the Joint Committee on Taxation. The amounts involved in these redeterminations are reflected in the following chart:[3]

| Year | Tax liability | Tax overpayment[4] | Net overpayment (liability) |
|---|---|---|---|
| 1972 | $1.50 | $15,578.01 | $15,576.51 |
| 1973 | 0 | 40,314.56 | 40,314.56 |
| 1974 | 317,597.50 | 73,344.86 | (244,252.64) |
| 1975 | 360,901.30 | 511,208.70 | 150,307.40 |
| 1976 | 55,025.60 | 0 | (55,025.60) |
| 1977 | 779,205.15 | 139,891.99 | (639,313.16) |
| 1978 | 12,137.71 | 0 | (12,137.71) |
| Total | 1,524,868.76 | 780,338.12 | (744,530.64) |

On February 9, 1979, petitioner filed the Federal estate tax return for the estate of decedent. The company was valued at $2,765,203. The gross estate was valued at $4,472,347. The total of decedent's debts and the estate's expenses was set at $1,398,648. Petitioner included the total of the gross annual income tax overpayments in the gross estate as an asset passing to Martha, and treated the total of the gross annual income tax liabilities separately as a debt of the estate.

In his statutory notice of deficiency, respondent made various adjustments. Among these was an adjustment which reduced the net amount deductible for bequests to a surviving spouse by $456,338.04. This reduction resulted from, among other things, an adjustment to that portion of the marital deduction which represents assets other than jointly held property, insurance, mortgages, notes, and cash, including the nondisclaimed portion of the company (Item 4 of Schedule M of the Estate Tax Return). Respondent's

---

[3]Due to concessions and the myriad changes of figures both sides have submitted since the petition in this case was filed, the chart figures differ from the figures respondent sent petitioner with the statutory notice of deficiency. The parties agree to the figures in the chart.

[4]For convenience, we adopt the parties' terminology in calling these figures overpayments. The positive figures in the last column, above, are the only true overpayments in this case.

adjustment of this item was based on the following method of computation.[5]

| | | | |
|---|---|---|---|
| Gross estate (as corrected) | | | $4,790,344.01 |
| Less: nonadministrative assets, Schedule D | $71,352.00 | | |
| E | 293,055.00 | | |
| G | 10,300.00 | (374.707.00) | |
| | | 4,415,637.01 | |
| Income tax overpayments | | (891,711.01) | |
| Gross administrative estate | | 3,523,926.00 | |
| Less: items renounced by widow | | | |
| 75% of the Company (as corrected) | 2,186,762.25 | | |
| 100% of Note #1 | 125,000.00 | | |
| 100% of Note #2 | 125,000.00 | (2,436,762.25) | |
| Gross amount passing to wife | | 1,087,163.25 | |
| Less: expenses allocable thereto: | | | |
| Debts and expenses, Schedules J and K | 1,870,949.20 | | |
| Less: income tax overpayments | (891,711.01) | | |
| | 979,238.19 | | |
| Expenses claimed for income tax | | | |
| Attorney's fees | 50,000.00 | | |
| Accounting charges | 26,000.00 | | |
| | 1,055,238.19 | | |
| Multiplied by $1,087,163.25 | 30.85% | (325,540.95) | |
| $3,523,926.00 | | | |
| Amount of administrative estate passing to wife[6] | | 761,622.30 | |
| (Sch. M, item 4) | | | |

What respondent did here was to remove as an estate asset decedent's total gross annual income tax overpayments. Respondent set off each such overpayment against the liability, if any, for that same year to obtain the net annual income tax overpayment or liability. In a final step, respondent then netted all the net annual overpayments and liabilities against each other to obtain a single net overall income tax liability.

No refund regarding any overpayments of income tax in any of the years 1972 through 1978 was ever issued to Edward P. Bender, Martha A. Bender, or the Estate of Edward P. Bender. The Estate of Edward P. Bender

---

[5]The figures given are the ones respondent used in his notice of deficiency. Although most differ from the figures now used by the parties, the method of computation, which has not changed, is that upon which we focus.

[6]Although respondent denominated this final figure as he did, the figure represents only a portion of the administrative estate passing, and does not include, for example, Schedule C assets (mortgages, notes, and cash).

remains open for administration by the executrix, Martha A. Bender. No distribution of the principal assets of said estate has been made by the executrix or the Orphans' Court of Cambria County, Pennsylvania.

## OPINION

Petitioner contends that the above-described computation improperly reduced the marital share, and hence reduced the marital deduction and inflated the taxable estate. Petitioner argues as follows: All income tax overpayments owed to decedent as of the date of his death are assets which passed to Martha in the marital share, as undisclaimed residuary property. Decedent's gross income tax liabilities should be treated as a separate debt of the estate. In other words, the liabilities should be spread ratably among all the residuary heirs.

Respondent contends first that this Court has no jurisdiction to hear the matter. Alternatively, respondent argues that, if in fact we have jurisdiction, the offset of income tax overpayments against liabilities was proper, the income tax overpayments as of decedent's date of death cannot constitute "an interest in property which passes or has passed from the decedent to the surviving spouse" as required by section 2056(a), the income tax overpayments by the decedent as of his date of death cannot constitute an asset of the decedent's gross estate because it is a "mythical asset" causing an impermissible double deduction, and the marital deduction is entirely free from the estate tax.

We turn first to the question of jurisdiction. The Tax Court is purely a creature of statute and has only the power given to it by Congress. *Estate of Smith v. Commissioner*, 638 F.2d 665, 669 (3d Cir. 1981); *Naftel v. Commissioner*, 85 T.C. 527 (1985). However, speaking of a Tax Court proceeding to determine estate tax, the Fifth Circuit has said "the Tax Court acquires jurisdiction over the entire cause of action, necessarily including all possible issues controlling the determination of the amount of tax liability * * *." *Finley v. United States*, 612 F.2d 166, 170 (5th Cir. 1980). Further, "the tax liability of an estate constitutes a single cause of action." *Finley v. United States*, *supra* at 170.

In the context of income and gift tax deficiencies, section 6214(b) provides:

(b) *Jurisdiction over other years and quarters.* The Tax Court in redetermining a deficiency of income tax for any taxable year or of gift tax for any calendar year or calendar quarter shall consider such facts with relation to the taxes for other years or calendar quarters as may be necessary correctly to redetermine the amount of such deficiency, but in so doing shall have no jurisdiction to determine whether or not the tax for any other year or calendar quarter has been overpaid or underpaid.

Under the authority of section 6214(b) and its predecessor, section 272(g) of the Internal Revenue Code of 1939, the courts have looked to the effect of a net operating loss on the tax liability in dispute, even if the loss year itself was not properly before the Court. *Marcello v. Commissioner*, 380 F.2d 499 (5th Cir. 1967); *Phoenix Coal Co. v. Commissioner*, 231 F.2d 420 (2d Cir. 1956); see also *Schmidt v. Commissioner*, 272 F.2d 423 (9th Cir. 1959); cf. *Commissioner v. van Bergh*, 209 F.2d 23 (2d Cir. 1954) (recomputation of tax liability for a time-barred year allowed so as to negate net operating loss carryback by setoff).

In this case, decedent's 1978 net operating loss and his income tax liabilities for the years prior to his death are not before us, nor are they in dispute. The statutory notice was directed to petitioner, not decedent. We are asked to redetermine petitioner's estate tax liability, not decedent's income tax liability. Over the former, we have jurisdiction; over the latter, we have none. We are not ousted from jurisdiction over the former merely because a proper determination of the estate tax requires us to take into account, without altering, income tax liabilities and overpayments for taxpayers or taxable periods not properly before us. See sec. 6214(b).

The authorities respondent cites are not on point. *U.S. ex rel. Girard Trust Co. v. Helvering*, 301 U.S. 540 (1937), merely decided that mandamus is not an appropriate remedy to compel the Commissioner to refund to the taxpayer taxes erroneously collected. The following cases simply denied the jurisdiction of the Tax Court or the Board of Tax Appeals to order the Commissioner to refund overpayments: *Continental Equities, Inc. v. Commissioner*, 551 F.2d 74 (5th Cir. 1977); *Morse v. United States*, 494

F.2d 876 (9th Cir. 1974); *Transport Manufacturing & Equipment Co. v. Commissioner*, 480 F.2d 448 (8th Cir. 1973); *Robbins Tire & Rubber Co. v. Commissioner*, 53 T.C. 275 (1969); and *Jones v. Commissioner*, 34 B.T.A. 280 (1936). That question is not before us.

*Commissioner v. Gooch Milling & Elevator Co.*, 320 U.S. 418 (1943), is also distinguishable. There the Supreme Court held that an overpayment in a time-barred year cannot be offset by the Board of Tax Appeals against a deficiency in an open year under the doctrine of equitable recoupment. Resolution of the taxpayer's claim "necessarily involved a determination of whether there was an overpayment during the [year not before the Board]." 320 U.S. at 421. Further, "the redetermination of the tax liability for the [year before the Board] was in no way dependent on any prior tax assessment or overpayment." 320 U.S. at 420-421.

Similarly inapposite is *First Security Bank of Idaho v. Commissioner*, 592 F.2d 1046 (9th Cir. 1979). There, the Tax Court was held incorrect in determining the fact of an overpayment in a year not before it, and then setting off that overpayment against liabilities for years before it.

Petitioner does not ask us to order a refund, nor does she seek a redetermination of decedent's income tax liabilities or overpayments. Rather, petitioner contends that, although respondent's treatment of decedent's income tax liabilities and overpayments may be correct for some purposes, it is incorrect for purposes of determining petitioner's estate tax liability. In deciding this issue, we need only consider the fact of the decedent's income tax liabilities and overpayments, not their correctness. We have jurisdiction to do so.

We now turn to the merits of petitioner's claim. We do not agree with petitioner that respondent's use of his offset power improperly deprived the surviving spouse of an asset with a value equal to the total of the decedent's gross annual income tax overpayments. We think, however, that petitioner was entitled to compute the decedent's estate tax liability without presuming respondent would set off one year's net income tax overpayment against another year's net income tax liability.

Section 2031 provides that the value of a decedent's gross estate shall be determined with reference to the value of

property at the time of his death. Section 6402(a)[7] provides that the Secretary *may* credit the amount of any tax overpayment against any tax liability of the person who made the overpayment.

Petitioner was not entitled to treat each gross annual income tax overpayment independently of each gross income tax liability for the same year. In the context of a judicial, rather than an administrative setoff, it has been held that:

> the taxpayer cannot recover unless he has overpaid his tax. It is not enough that he can prevail on the particular items on which he sues, for he may have underpaid with respect to other components entering into that tax. Only if the overall balance moves his way can he recover * * * [*Dysart v. United States*, 169 Ct. Cl. 276, 340 F.2d 624, 628 (1965).]

See *Kingston Products Co. v. United States*, 177 Ct. Cl. 471, 368 F.2d 281 (1966). We think that the logic of the cited cases is equally applicable in the administrative context. This is akin to the principle that one cannot deduct losses incurred in a transaction without also declaring the profits. See *Grant v. United States*, 399 F. Supp. 79, 81 (E.D. Ark. 1975).

We note that the *Dysart* opinion distinguished a within-year setoff (the case before it) from a setoff of one year's tax liability against another's. In at least one circumstance, the Commissioner may absolutely refuse to set off one year's liability against another year's overpayment. See *Rothensies v. Electric Storage Battery Co.*, 329 U.S. 296 (1946) (setoff improper where overpayment year closed by statute of limitations). In general, the Commissioner has broad discretion in such matters, and is not required to set off overpayments for one year against liabilities for another. Sec. 6402(a); *Acker v. United States*, 519 F. Supp. 178, 182 (N.D. Ohio 1981).

In *Kalb v. United States*, 505 F.2d 506 (2d Cir. 1974), cert. denied 421 U.S. 979 (1975), the court considered whether the Commissioner had wrongfully refused to honor

---

[7]Sec. 6402(a) provides:

In the case of any overpayment, the Secretary, within the applicable period of limitations, *may* credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c) and (d), refund any balance to such person. [Emphasis supplied.]

a request by a corporate officer to apply an overpayment arising from the company's net operating loss in 1960 to reduce its withholding tax liability for various periods in 1959, 1960, and 1961. If the loss were so applied it would have eliminated the company's liability, as well as that of the officer as a responsible person. The court held that the Commissioner did not abuse his discretion in refusing to make the offset.

The Seventh Circuit has expressed doubt that the discretion embodied in section 6402 could ever be challenged. See *Vishnevsky v. United States*, 581 F.2d 1249, 1253 (7th Cir. 1978). That court further noted that even mandamus would in no way interfere with the Commissioner's discretion to apply an overpayment as he saw fit. 581 F.2d at 1255 n. 7. See also *United States v. Teti*, an unreported case (D. Conn. 1975, 36 AFTR2d 75-5762, 75-2 USTC par. 9709). Respondent's argument that he is under a mandatory obligation to offset year against year is contrary not only to his own arguments in prior cases but to the weight of authority as well.

We think that petitioner was entitled to prepare the decedent's estate tax return on the basis of the facts as they existed at the date of decedent's death. As of that date, decedent's net annual income tax overpayments and liabilities were ascertainable. What was not ascertainable was whether the respondent would exercise his discretion and set off overpayments against liabilities for different years. It was not incumbent upon petitioner to assume a setoff.

Since respondent clearly has discretion, for purposes of collection, to treat each year separately, it ill behooves him to argue that petitioner may not so treat each year. Each year is assessed separately and each is subject to its own statute of limitations and deficiency procedures. Each year is independent of the other.[8] See *Commissioner v. Sunnen*, 333 U.S. 591, 598 (1948).

Respondent argues that income tax overpayments never

---

[8]We note that petitioner could have paid off the deficiency years leaving only the refund years. In such case, the refunds would clearly be includable in the spousal share as nondisclaimed assets of the estate. We question whether that option should be foreclosed by the fortuity that respondent has determined the estate tax before petitioner has paid the deficiency years.

"passed" to Martha so as to allow them to be deductible as part of the spousal bequest. The argument is predicated on the requirement that to be deductible, assets must pass to the widow as a beneficial owner. Since no refund check was ever issued to Martha Bender, the argument continues, and since all income tax overpayments resulted from decedent's business activities independent of his widow, she is not the beneficial owner of the overpayments.

Respondent completely fails to see that Martha Bender need not be the individual payee on a receivable for it to be includable in the spousal bequest. In fact, to the extent she was the payee, an asset would *not* be in the estate. Her beneficial interest is as an *heir*. If decedent had an interest, his wife could become its beneficial owner.

Respondent next argues that the overpayments are a "mythical" estate asset creating an impermissible double deduction. The argument is premised on the principle that an asset cannot be an element of the marital deduction if not a part of the gross estate. The argument begs the question.

To contend that an asset cannot be a part of the marital deduction because it is not part of the gross estate is to state the obvious. We are here to decide, however, what part, if any, of the decedent's income tax overpayments are includable in the gross estate.

Respondent's final argument is that the marital bequest bears no portion of the estate tax. True though this may be, it does not suffice to change the result herein.

In sum, although petitioner was not entitled to view decedent's tax liabilities as distinct from his overpayments within the same year, petitioner was entitled to include as assets of the estate decedent's net annual income tax overpayments, and treat as debts of the estate decedent's net annual income tax liabilities.

To reflect the foregoing,

*Decision will be entered under Rule 155.*