T.C. Memo. 2015-226

UNITED STATES TAX COURT

ESTATE OF RUSSELL BADGETT, JR., DECEASED, BENTLEY BADGETT,
JR., EXECUTOR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3503-15.                          Filed November 24, 2015.

<u>Rebecca A. Martin</u> and <u>William J. Cooper, Jr.</u>, for petitioner.

<u>Diana N. Wells</u> and <u>Denise A. Diloreto</u>, for respondent.

MEMORANDUM OPINION

JACOBS, <u>Judge</u>:  The parties submitted this case fully stipulated pursuant
to Rule 122.  The issue for decision is whether Federal income tax refunds for
2011 and 2012 due Russell Badgett, Jr. (decedent), at the time of his death are
includible in the value of his gross estate.  Respondent (Internal Revenue Service

[*2] or IRS) claims they are and thus determined an estate tax deficiency of $146,454; decedent's estate (estate) claims they are not.

Decedent resided in Kentucky at the time of his death. The legal address of the estate and the residence of the executor at the time the petition was filed was also in Kentucky.

All section references are to the Internal Revenue Code, as amended, in effect at the time of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

Decedent died on March 8, 2012. On April 11, 2012, the estate filed a Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return, with respect to decedent's Federal income tax for 2011. On May 1, 2012, a Form 1040, U.S. Individual Income Tax Return, for 2011 was filed for decedent reflecting total tax of $495,096, total payments of $924,411, and an overpayment of $429,315. The return further reflected that $25,000 of the overpayment was to be applied to decedent's 2012 estimated tax and $404,315 was to be refunded. The IRS applied the $25,000 estimated tax payment to

[*3] decedent's 2012 Federal income tax on April 15, 2012, and refunded $404,315 to the estate on May 28, 2012.

On December 13, 2012, the estate filed a Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return. The 2011 Federal income tax refund due decedent was not included in the value of the gross estate.

On April 15, 2013, a Form 1040 for 2012 was filed for decedent reflecting total tax of $10,874, total payments of $25,000, and an overpayment of $14,126. On May 13, 2013, the IRS issued a refund of $14,126 to the estate. The $14,126 refund for 2012 was not included in the value of decedent's gross estate as reflected on the Form 706.

On January 6, 2015, the IRS mailed a notice of deficiency to the executor of the estate determining a deficiency in estate tax; the entire amount of the deficiency is the result of the estate's not including the amounts of the 2011 and 2012 Federal income tax refunds in the value of decedent's gross estate.

## Discussion

Section 2031(a) provides that "[t]he value of the gross estate of the decedent shall be determined by including to the extent provided for in this part, the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated." Section 2033 provides that "[t]he value of the gross estate

[*4] shall include the value of all property to the extent of the interest therein of the decedent at the time of his death."

To determine a decedent's interest in property, we first look to State law:

State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed. Our duty is to ascertain the meaning of the words used to specify the thing taxed. If it is found in a given case that an interest or right created by local law was the object intended to be taxed, the federal law must prevail no matter what name is given to the interest or right by state law.

Morgan v. Commissioner, 309 U.S. 78, 80-81 (1940) (fn. ref. omitted). Similarly, in Frank Lyon Co. v. United States, 435 U.S. 561, 572 (1978), the Supreme Court, quoting Corliss v. Bowers, 281 U.S. 376, 378 (1930), stated: "[T]axation is not so much concerned with the refinements of title as it is with actual command over the property taxed--the actual benefit for which the tax is paid." Thus, we are not necessarily bound by State law formalities; we may look through to the substance of the matter. Estate of Fortunato v. Commissioner, T.C. Memo. 2010-105.

The estate asserts that under Kentucky law, property must be in existence on the tax assessment date to be subject to tax and cannot be a mere possibility or expectancy. See Commonwealth v. Travelers' Ins. Mach. Co., 205 S.W. 561 (Ky. 1918); Comcast Cablevision of the South v. Revenue Cabinet, Commonwealth of Ky., No. K-18194, 2001 WL 484469, at *7 (Ky. Bd. Tax. App. May 1, 2001).

**[*5]** The estate acknowledges that decedent overpaid his 2011 and 2012 income tax but posits that an "overpayment" does not create a right to an income tax refund. The estate argues that there is no property interest until the refund has been declared by the Government. Continuing, the estate postulates that even if decedent had an expectancy to receive the income tax refunds, "under Kentucky state law, a mere expectancy is not the same as an interest in property." The estate cites a number of cases to support its position, but these cases are distinguishable from the case before us.

In re Pigott, 330 B.R. 797 (Bankr. S.D. Ala. 2005), was a bankruptcy case in which the IRS sought to offset an unpaid dischargeable tax debt of the debtors (husband and wife) incurred in 1996 and 1998 against a "potential" tax overpayment they made in 2004.[1] In that case, the bankruptcy court found that the debtors' tax overpayment was not a property interest, stating: "[T]he court is convinced that the tax law that holds that an overpayment is not the same as a refund is correct. Since an overpayment is not credited to the debtor until after offsets have occurred, if the IRS chooses to make such offset, there is no property interest in a debtor until the refund has been declared." Id. at 802; see also U.S.

---

[1]The bankruptcy debtors had not filed their 2004 Federal income tax return at the time their case was heard.

**[*6]** Dep't of Agric. Rural Hous. Serv. v. Riley, 485 B.R. 361 (W.D. Ky. 2012); Lopes v. United States HUD (In re Lopes), 211 B.R. 443 (D. R.I. 1997) (cited by the estate for similar propositions).

Estate of Bender v. Commissioner, 827 F.2d 884 (3d Cir. 1987), aff'g in part, rev'g in part 86 T.C. 770 (1987), was an estate tax case in which the testator had unpaid Federal tax liabilities for years other than those involving the tax overpayments. The Court of Appeals for the Third Circuit concluded that the testator did not have a property interest in the tax overpayments for purposes of calculating his gross estate. The court held that the IRS' discretionary power to offset the testator's tax overpayments against his unpaid liabilities meant that the estate could not compel the IRS to issue a tax refund for the years for which the testator overpaid his taxes; therefore, the tax overpayments "never attained the status of independent assets for estate tax purposes." Id. at 887.

In re Pigott and Estate of Bender each involved a taxpayer who had undisputed and unpaid tax liabilities that offset his/her respective tax overpayments. Section 6402(a), which authorizes the Government to make tax refunds, provides:

**[*7]**      SEC. 6402(a).  General Rule.--In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c), (d), (e), and (f) refund any balance to such person.[2]

Thus, the IRS has discretion in determining whether overpayments should be refunded to the taxpayer or applied to outstanding tax (or other[3]) liabilities of the taxpayer.  Because there was no guarantee that the IRS would refund the full amounts of the overpayments to the taxpayers, we, in Estate of Bender, and the bankruptcy court, in In re Pigott, concluded that the overpayments could not be treated as taxpayer property.

However, we reached a different conclusion in another case where a deceased taxpayer had no tax liabilities to which a tax overpayment could be offset.  In Estate of Chisolm v. Commissioner, 26 T.C. 253 (1956), the taxpayer died before his Federal income tax return was filed.  We determined therein that

---

[2]Sec. 6402(c), (d), (e), and (f) provides for the offset of any portion of a taxpayer's overpayment against past-due support (as defined in sec. 464(c) of the Social Security Act), debts to Federal agencies, State income tax obligations, and unemployment compensation debts owed by the taxpayer.

[3]See, e.g., U.S. Dep't of Agric. Rural Hous. Serv. v. Riley, 485 B.R. 361 (W.D. Ky. 2012), in which the IRS applied an overpayment to reimburse the Department of Agriculture under sec. 6402(a) and (d)).

**[\*8]** the full value of the deceased taxpayer's viable but unasserted income tax refund claim was an asset of the estate, stating:

> The entire taxes on the income of Harvey [the deceased taxpayer] and his wife for 1950, as disclosed on the return filed for that year, were paid by Harvey. He was dead at the time the return was filed and of course did not join in filing it. However, the type of return that was filed for that period is immaterial as is the crediting of the overpayment as requested on that return. The fact is that Harvey had overpaid not only his own taxes but those of himself and his wife. The resulting overpayment was really his. It was valuable property and a part of his estate at the time he died. It was includible in his estate under section 811(a) [a precursor to the current section 2033], and incidently would have been includible in his estate even if it represented jointly held property since he had supplied the entire consideration therefor. * * *

Id. at 257; see Estate of Swezey v. Commissioner, T.C. Memo. 1976-361 (Federal and State tax refunds for year of decedent's death were includible in value of decedent's gross estate); Estate of Law v. Commissioner, T.C. Memo. 1964-257 (Federal tax refund received by decedent's widow was includible in value of decedent's gross estate even though decedent died before tax return was filed).

We believe it proper to herein follow the holdings in these cases. Simply stated, if no offsetting liability exists, section 6402(a) is clear: The statute mandates that the IRS "shall" refund any balance to the taxpayer. In the matter herein, there is no indication that decedent was subject to any liability or obligation against which the IRS could offset his overpayments. The status of the

**[\*9]** tax refund is more than a mere expectancy; the estate has the right to compel the IRS to issue a refund for the years for which decedent overpaid his tax. Thus, we hold that the overpayments in question attained the status of independent assets for estate tax purposes; they constitute decedent's property for estate tax purposes.

The estate maintains that Estate of Chisolm and its progeny are not herein applicable because the "[d]ecedent [in Chisolm] knew before he died he was entitled to an income tax refund". But the facts in Estate of Chisolm do not support that conclusion. The facts in Estate of Chisolm merely state that the decedent overpaid his tax, and the Court concluded that the overpayment constituted valuable property that was includible in the value of the decedent's gross estate.

The estate also argues that "a taxpayer has 'no legal right' to a tax refund unless and until the taxpayer files a successful suit within the permitted statutory periods against the IRS for that tax refund after meeting all conditions precedent." See, e.g., Commissioner v. Lundy, 516 U.S. 235, 237 (1996) (Tax Court lacks jurisdiction to award refund of tax paid more than two years prior to date on which Commissioner mailed taxpayer notice of deficiency in a case where taxpayer failed to file return); Hampton v. United States, 513 F.2d 1234, 1243 (Ct. Cl. 1975) (filing claim for refund is condition precedent to maintenance of any suit for

[*10] recovery of wrongfully assessed tax); Bank of Cal., Nat'l Ass'n v. Commissioner, 133 F.2d 428 (9th Cir. 1943) (decedent's claim for refund was property and includible in the value of her gross estate). Ebert v. United States, 66 Fed. Cl. 287, 290 (2005) (taxpayer bears burden of establishing she is entitled to refund and exact amount thereof). These cases do not support the estate's contention. Rather, they merely discuss the requirements imposed on a taxpayer of prosecuting a tax refund action.

We therefore hold that decedent had property interests in the values of his 2011 and 2012 Federal income tax refunds and consequently the refunds are included in the value of decedent's gross estate for Federal estate tax purposes. In reaching our holding, we have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be either without merit, irrelevant, or moot.

To reflect the foregoing,

Decision will be entered for

respondent.